# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 13, 2013

Lyle W. Cayce
Clerk

No. 12-40032

JOHN PRIESTER, JR.; BETTIE PRIESTER,

Plaintiffs-Appellants,

versus

JP MORGAN CHASE BANK, N.A.; JP MORGAN CHASE & COMPANY.;
LONG BEACH MORTGAGE COMPANY; ALAMO TITLE COMPANY;
CRISTOBAL M. GALINDO, P.C.; GALINDO LAW & TITLE;
GALINDO CRISTOBAL TITLE SERVICES; CRISTOBAL M. GALINDO;
KRISTEN L. TINSLEY,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Texas

Before DAVIS, JONES, and SMITH, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Appellants John and Bettie Priester obtained a loan backed by a lien on
their homestead from a bank eventually obtained by JP Morgan Chase Bank,
N.A. The mortgage agreement was signed at the Priesters' house in violation of
the Texas Constitution. Almost five years later, the Priesters sued for a declara-

No. 12-40032

tory judgment that the lien was void and that the mortgage holder was required to forfeit all principal and interest. The Priesters also sought damages for defamation. The defendants successfully moved to dismiss on the ground of limitations. We affirm.

I.

In November 2005, the Priesters obtained from Long Beach Mortgage Company ("Long Beach") a home equity loan of $180,000 secured by a first lien on their house. They allege that the closing of the loan occurred in their home rather than at the office of an attorney, the lender, or a title company as required by the Texas Constitution. They also contend that they did not receive notice of their rights twelve days before closing as required by the state constitution.

In July 2010, the Priesters sent a letter to Long Beach seeking "cure" of those alleged constitutional deficiencies. No action was taken, because the loan had been acquired by Chase. The Priesters therefore sent a letter to Chase in August 2010, requesting cure and attaching the letter that had been sent to Long Beach. Chase took no action to cure the perceived infirmities.

In October 2010, the Priesters sued various defendants (collectively, "Chase") in state court for a declaratory judgment that, under the Texas Constitution, the loan and accompanying lien on their home were "void *ab initio*," that defendants had failed to cure constitutional violations, and that therefore Chase was required to forfeit all principal and interest. The Priesters also sought actual and exemplary damages and attorney's fees for defamation, maintaining that Chase had engaged in libel by asserting that they were past due on their payments. Chase removed to federal court.

Chase then moved to dismiss the suit as time-barred under the four-year statute of limitations. The Priesters, by order of the magistrate judge ("MJ"),

No. 12-40032

filed an amended complaint, and the motion to dismiss was denied. They then filed a second amended complaint and motion to remand and later a motion for leave to file a second amended complaint. The suit was stayed during settlement negotiations, and the MJ dismissed all pending motions as moot; when the parties failed to settle, he allowed fourteen days for refiling, and Chase again filed a motion to dismiss. The MJ recommended that the motion to dismiss be granted, but the Priesters objected and filed a third amended complaint and a second motion to remand.

The district court adopted the recommendation of the MJ, dismissed the suit, and struck the second and third amended complaints because they would have joined non-diverse parties, destroying jurisdiction. The Priesters timely appealed.

II.

We review a dismissal under Federal Rule of Civil Procedure 12(b)(6) *de novo*, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.'"[1]

We review a denial of leave to amend a complaint for abuse of discretion. *See Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc).

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See generally* 2 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 8.04[1][b] (3d ed. 2012).

No. 12-40032

III.

Jurisdiction is based on diversity of citizenship, so we apply the laws of Texas as interpreted by Texas authorities.[2] We therefore first look to the text of the Texas Constitution and any decisions of the Texas courts in interpreting these provisions. Although not controlling, "decisions of Texas intermediate appellate courts may provide guidance." *Packard v. OCA, Inc.*, 624 F.3d 726, 729 (5th Cir. 2010).

The Priesters claim that defendants violated two provisions of the Texas Constitution. The first states that

> [t]he homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for
>
> . . .
> (6) an extension of credit that:
>
> . . .
> (M) is closed not before:
> (i) the 12th day after the later of the date that the owner of the homestead submits a loan application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by Subsection (g) of this section.

TEX. CONST. ART. XVI § 50(a)(6)(M)(i). The notice under Subsection (g) includes a list of rights of the homeowners in securing a loan guaranteed by a lien on their homestead.

The second provision states that a lien on a homestead is valid only if it "is closed [ ] at the office of the lender, an attorney at law, or a title company." *Id.* § 50(a)(6)(N). No lien on a homestead "shall ever be valid unless it secures a debt described by this section." *Id.* § 50(c).

If a lien is made in contravention of these requirements, the constitution

---

[2] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 111–12 (holding that a period of limitations is a matter of state law to be determined pursuant to *Erie*).

provides for "cure." Under Section 50(a)(6)(Q)(x), a party may give notice of a defect, and the other party has sixty days to cure. The Priesters allege that they did not receive the twelve-day notice, that the lien agreement was closed in their living room, and that defendants did not cure when served notice, so the lien is invalid. Chase responds, and the MJ and district court agreed, that the affirmative defense of limitations bars suit.

We first address whether a limitations period applies to the Priesters' claims. Although the state constitution does not include a limitations period related to claims under Section 50(a)(6), "[e]very action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.051.

The Texas Supreme Court has not addressed whether that residual limitations period applies to defects in homestead liens, but the two Texas courts of appeals that have addressed the issue have found that the residual statute applies. Addressing a Section 50(a)(6) defect, the court in *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 839 (Tex. App.—Dallas 2008, no pet.), concluded that the "four-year statute of limitations applies to the constitutional and fraudulent lien causes of action" embodied in the Texas Constitution. The court in *Schanzle v. JPMC Specialty Mortg. LLC*, No. 03-09-00639-CV, 2011 WL 832170, at *4 (Tex. App.—Austin Mar. 11, 2011, no writ), adopted that position as well, noting that the "four-year statute of limitations has been applied to violations of the constitutional requirements for home equity loans, calculated from the date of closing on the loan."

Those courts relied in part on appellate decisions that had applied the residual limitations period to other types of constitutional claims. For example, in *Ho v. University of Texas at Arlington*, 984 S.W.2d 672, 686 (Tex. App.—Amarillo 1998, pet. denied), the court held that a claim under the Equal Pro-

tection Clause of the Texas Constitution was subject to the residual limitations period, "because statutes of limitation bar the remedy and not the right, and therefore, constitutional rights may be subjected to those time limitations imposed by statute." Constitutional claims, the court noted, are encumbered by the same problems as are other types of claims—they "may become stale as do other claims, and bring with them the associated problems with overdue lawsuits, such as faded memories, departed witnesses, and misplaced evidence." *Id.*

The court in *Ho* relied on *Calverley v. Gunstream*, 497 S.W.2d 110, 115 (Tex. Civ. App.—Dallas 1973, writ ref'd n.r.e.), which similarly held that limitations periods "apply to delay in pursuit of remedies for enforcement of constitutional rights as well as to any other delay in pursuit of available remedies." Without a limitations period, a defendant would be forced to defend himself "after memories have faded, witnesses have died or disappeared, and evidence has been lost," all of which would prejudice his defense. *Id.* at 114.

The decision in *Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342 (Tex. 2001), offers indirect support for the applicability of limitations. The court responded to a question certified by this court on the issue of cure, explaining that a lien cured under Section 50(a)(6)(Q) became valid even if it was "invalid" before the cure. *Id.* at 347. Discussing forfeiture, the court stated that "if a lien that secures such a loan is voided," the lender loses all rights to recovery. *Id.* at 346. That language suggests that the Texas Supreme Court considers liens created in violation of Section 50(a)(6) to be voidable rather than void—a "void" lien could not be "voided" by future action.

We have not before analyzed in any depth whether the statute of limitations applies to the constitutional provisions at issue here. In *Boutari v. JP Morgan Chase Bank N.A.*, 429 F. App'x 407 (5th Cir. 2011) (per curiam), however, we affirmed a judgment that limitations applies to claims under Section 50(a)(6). In a two-sentence opinion, we said that we had "determined that the judgment

of the district court should be affirmed for essentially the reasons set forth by the district court." *Id*. The opinion we affirmed had applied the four-year statute of limitations. *See Boutari v. JP Morgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 144094 (W.D. Tex. June 10, 2010).

Therefore, we have arguably already acknowledged that a limitations period applies. Numerous district and bankruptcy courts[3] have also applied the four-year limitations period.[4] We thus conclude that a limitations period applies to constitutional infirmities under Section 50(a)(6).

Having determined that limitations applies, we must address when the claim accrues. Generally, under Texas law, "[c]auses of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011). "In most cases, a cause of action accrues

---

[3] *See Reagan v. U.S. Bank Nat'l Ass'n*, 2011 WL 4729845 (S.D. Tex. Oct. 6, 2011); *Johnson v. Deutsche Bank Nat'l Trust Co.*, 2010 WL 4962897 (S.D. Tex. Dec. 1, 2010); *In re Ortegon*, 398 B.R. 431, 439–40 (Bankr. W.D. Tex. 2008); *Hannaway v. Deutsche Bank Nat'l Trust Co.*, 2011 WL 891669 (W.D. Tex. Mar. 11, 2011); *Williams v. Deutsche Bank Nat'l Trust Co.*, 2011 WL 891645 (W.D. Tex. Mar. 11, 2011); *In re Chambers*, 419 B.R. 652 (Bankr. E.D. Tex. 2009).

[4] The Priesters note that not all district courts to address this question have agreed. In *Smith v. JPMorgan Chase Bank, Nat'l Ass'n*, 825 F. Supp. 2d 859, 861 (S.D. Tex. 2011) *adhered to on reconsideration sub nom. Smith v. JPMorgan Chase Bank Nat'l Ass'n*, 2012 WL 43627 (S.D. Tex. Jan. 9, 2012), the court held that under the Texas Constitution, a "noncompliant mortgage lien against a homestead is [ ] void ab initio" and that therefore the limitations period does not apply. In *Santos v. CitiMortgage, Inc.*, 2012 WL 1065464 (N.D. Tex. Mar. 29, 2012), the court, relying on *Smith*, held that the limitations period did not apply and that a constitutionally infirm lien was invalid. It did, however, apply the limitations period to the resulting claim for forfeiture of principal and interest due four years before the suit was brought. *Id*.

The key in *Smith* was the finding that constitutional noncompliance renders liens void rather than voidable. The Priesters argue that this reasoning should be applied here and that because the lien was void *ab initio*, no statute of limitations applies. That conclusion, however, is contrary to the constitutional scheme. Because a cure provision exists in Section 50(a)(6)(Q), liens that are contrary to the requirements of § 50(a) are voidable rather than void from the start. *See Doody*, 49 S.W. 3d at 342.

No. 12-40032

when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). This accrual rule is referred to as the "injury rule."

An alternative is the "discovery rule." "The discovery rule exception operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). The discovery rule is a "very limited" exception and will be applied only "when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Id*. The Texas courts have set the "inherently undiscoverable" bar high, to the extent that the discovery rule will apply only where it is nearly impossible for the plaintiff to be aware of his injury at the time he is injured. *See S.V. v. R.V.*, 933 S.W.2d 1, 6–7 (Tex. 1996).

The Priesters argue that some version of the discovery rule, rather than the injury rule, should apply here. They contend that the period runs at the notice of demand for cure of the constitutional deficiencies or failure to cure.

The Texas courts that have addressed this issue have applied the injury rule rather than the discovery rule and have held that limitations begins to run at the closing of a lien. In *Rivera*, the court concluded that "the legal injury occurred when [the lender] made a loan" violating the Texas Constitution. *Rivera*, 262 S.W.3d at 840. Similarly, the court in *Schanzle*, 2011 WL 832170, at *4, held that the period of limitations is "calculated from the date of closing on the loan."

The district court in *Boutari*, which this court upheld, adopted the finding and recommendation of the MJ that the "four-year limitation period [ ] commenced when the home equity loan in question closed." *Boutari*, 2010 U.S. DIST. LEXIS 144094, at *27. The district courts have applied the injury rule

8

rather than the discovery rule in every case in which they have applied limitations to Section 50(a)(6) violations.[5]

We therefore conclude that the legal injury rule applies to the creation of unconstitutional liens.[6] Insofar as the period of limitations exists to preserve evidence and create settled expectations, it would essentially be nullified by allowing parties to wait many years to demand cure. The injury occurred when the Priesters created the lien, and there was nothing that made the injury undiscoverable. The Priesters knew that the closing documents were signed in their living room and that they were not given notice of their rights. A lack of knowl-

---

[5] *See, e.g., Reagan*, 2011 WL 4729845, at *4 (holding that, because the injury was "not inherently undiscoverable," the injury rule applies).

[6] The Priesters argue that the cure provision and sixty-day period for cure are where the injury occurs. They are unable to find any direct support for that novel argument. They do cite *Cummins & Walker Oil Co. v. Smith*, 814 S.W.2d 884, 887 (Tex. App.—San Antonio 1991, no writ), which held, in a contract case, that "where the parties so frame their contract as to make prior demand an integral part of a cause of action or a condition precedent to a right to sue, the statute of limitations does not begin to run until demand is made."

The demand provision in a contract, however, is distinguishable. There is no injury at the creation of the contract, and the parties agreed that they would attempt to cure rather than litigate what was already a valid contract. The lien, on the other hand, is voidable from the day of creation; the legal injury occurs at a definite point in time. Additionally, there is nothing in the Texas Constitution that suggests that the borrower must seek cure before filing suit.

Further, courts that have applied *Cummins* have held that if there is a breach of contract, a demand requirement does not indefinitely toll limitations. For example, in *Aetna Cas. & Sur. Co. v. State*, 86 S.W.2d 826, 831 (Tex. Civ. App.—Fort Worth 1935, writ dism'd), the court held that, "[w]here a demand is a condition precedent to suit, the plaintiff may not, by failing or refusing to perform the condition, toll the running of the statute and reserve for himself the right to sue within the statutory period from such time as he decides to make a demand." The court explained that "it is the general rule that in such a case a demand must be made within a reasonable time after it may lawfully be made." *Id.* This court has found that "reasonable" period of time to relate to the statute of limitations. *See United States v. First City Capital Corp.*, 53 F.3d 112, 115 (5th Cir. 1995). *Cummins* therefore is inapposite here; accrual occurs at injury.

edge that that was a violation of the law is insufficient to toll limitations.[7] This is not one of the "rare" instances in which the discovery rule applies—the injury is certain to be "discovered within the prescribed limitations period."

The Priesters argue that, even if a limitations period applies and accrued at the creation of the lien, Chase is estopped from asserting a limitations defense, because the originators of the loan "fraudulently concealed their illegal conduct . . . , tolling the statute of limitations." They base this argument on Section 50(a)(6)(M)'s requirement that notice of constitutional rights be given to homeowners twelve days before closing. They aver that defendants' lack of disclosure functioned as fraudulent concealment.

The doctrine of fraudulent concealment estops defendants from raising limitations as a defense. Where a defendant has hidden evidence of harm from a plaintiff, he will not "be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V.*, 933 S.W.2d at 6. Fraudulent concealment tolls limitations "until the claimant, using reasonable diligence, discovered or should have discovered the injury." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999). Fraudulent concealment has four elements: "(1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception." *Holland v. Thompson*, 338 S.W.3d 586, 596 (Tex. App.—El Paso 2010, pet. denied).[8]

---

[7] *See Colonial Penn Ins. v. Mkt. Planners Ins. Agency Inc.*, 157 F.3d 1032, 1034 (5th Cir. 1998) ("The rule delays the statute of limitations only until the claimant knows or should know the facts that could support a cause of action, not until she realizes that the facts do support a cause of action.").

[8] *See also Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 217 (Tex. App.—Texarkana 2006, pet. denied); *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex. App.—Fort Worth 1997, pet. denied).

No. 12-40032

The first two elements are certainly met here. The constitutional violation is not challenged, and insofar as constructive knowledge or a "should have discovered" standard can be imposed on the Priesters, knowledge should be imputed to the defendants as well.

There is no evidence, however, that the defendants used "deception" to conceal any constitutional violations. First, it would be impossible to conceal the fact that the closing occurred in the Priesters' living room. Second, the defendants did not "conceal" the fact that they did not provide the required constitutional notices. It is difficult to imagine how a party would conceal a lack of disclosure.

The Priesters argue, in their second and third amended complaints (which were struck by the district court), that because the defendants had an attorney sign the closing documents, they effectively represented that all legal disclosures had been made and that the entire process comported with the constitutional requirements. That argument, however, is meritless. The identity of the title company signer does not represent anything. Moreover, it does not "conceal" the Priesters' legal rights. They could have hired their own attorney or discovered their legal rights in any number of places. In both cases, the facts were known and not able to be concealed.

The Priesters contend that because the defendants had a "duty to disclose" information pursuant to Section 50(a)(6)(M), their failure to do so acted as concealment and deception; they cite no authority to support that proposition. Moreover, the disclosure did not amount to concealment, because the lenders only had a duty to provide information regarding legal rights rather than factual information. The Texas courts have held that this does not rise to the level of fraudulent concealment.

"Mere failure to disclose a cause of action or mere concealment of a cause of action, when the defendant owes no duty to disclose, is not fraudulent conceal-

ment." *DiGrazia v. Old*, 900 S.W.2d 499, 503 (Tex. App.—Texarkana 1995, no writ). There is no duty to disclose here, and no special relationship. The Texas Supreme Court has not found a mortgagor-mortgagee relationship to include fiduciary duties.[9] Because there was no evidence or allegation of the defendants' attempting to conceal information, and because the facts that gave rise to any claims were obvious and not hidden, the doctrine of fraudulent concealment does not apply here to estop the lenders' assertion of the limitations defense.

The Priesters also claim they suffered defamation at the hands of the defendants, because they "report[ed] delinquent payments on the Priesters' credit reports." The Priesters argue that this is defamatory for two reasons, first because "home-equity loans are non-recourse,"[10] and second because the "the underlying lien is void and unenforceable."

The district court adopted the MJ's conclusion that the Priesters' defamation claim was "completely dependent on a determination of the validity of the loan" and that therefore, because the loan was valid, the derivative claim for defamation should be dismissed. The court cited *Boutari*, in which we similarly dismissed derivative defamation claims. The Priesters argue that the district court's conclusion was flawed: Their claim was independent and would not be time-barred, because the alleged defamation occurred recently.

Libel in Texas is "a defamation expressed in written [form] . . . that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." TEX. CIV. PRAC. & REM. CODE § 73.001.

---

[9] *See Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990) ("The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith.").

[10] This argument is nonsensical. The defendants reported that the Priesters were delinquent in payments. Even though the Priesters are correct that the loan was non-recourse, that does not have any bearing on whether they were delinquent.

"In both libel and slander the issues are whether the utterance was made, if it was false, if it damaged the complainant and if the speaker had any privilege." *Peshak v. Greer*, 13 S.W.3d 421, 426 (Tex. App.—Corpus Christi 2000, no pet.). The truth of a statement is "a complete defense to defamation." *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995).

The key issue here is the truth of defendants' statements. The alleged defamatory statements were contained in a report to credit agencies that stated that the Priesters were delinquent on their loan payments. Because the loan was valid, and the Priesters were delinquent, the statements to these effects were true, and so no defamation occurred.

The Priesters interpret the district court's decision as dismissing the defamation claim as time-barred itself. In support of their position, the Priesters cite only *Chevalier v. Animal Rehabilitation Center, Inc.*, 839 F. Supp. 1224, 1233 (N.D. Tex. 1993), in which the court held that "[a]s long as Plaintiff timely filed his [derivative] claim, the remedy for it is unscathed and the extant liability of an underlying defamation claim supports it regardless of the fate of a remedy for that underlying claim." The Priesters argue that the underlying constitutional claims are still "extant" and that the statute of limitations bars only remedies.

That position is incorrect. To the extent that a constitutional claim under Section 50(a)(6) renders a lien voidable rather than void, once the period of limitations has passed, the lien is no longer voidable and is valid. Thus, the Priesters' underlying claim for liability is no longer "extant." Unlike a claim for fraud or conspiracy, as in *Chevalier*, in the present case the lien becomes valid after the period of limitations passes, so the "harm" is, in effect, erased. There was thus no defamation, and the claim was rightly dismissed.

Finally, the Priesters appeal the decision to strike their second and third amended complaints that sought to join additional parties that would have

destroyed diversity jurisdiction. The Priesters argue that the amended complaints were filed in accordance with the court's scheduling order and that they were necessary to join outside parties and introduce additional claims.

Parties have an amendment of right under Federal Rule of Civil Procedure 15(a). Additionally, under Federal Rule of Civil Procedure 16(b), a scheduling order must set the time in which parties are permitted to amend pleadings and join other parties.

"[L]eave to amend under Rule 15(a) is to be freely given." *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). "[T]hat generous standard is tempered by the necessary power of a district court to manage a case." *Id.* In deciding whether to grant leave to amend, the court may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment."[11]

The Priesters argue that they were not trying to amend under Rule 15(a) but instead were relying on the Rule 16(b) scheduling order, which they claim allowed them to amend essentially as many times as they wanted within the period afforded by the MJ for amendment. They do not cite any authorities to support that proposition; instead, they refer to the local rules of the Eastern District of Texas. The citation, however, is as unpersuasive at it is disingenuous.

The Priesters cite Appendix L of the local rules, which offers a sample scheduling order. They then argue that the sample is a "local rule." Although the sample does state that it "is not necessary to file a motion for leave to amend before the deadline to amend pleadings," as set by the scheduling order, that is not a rule. *See* E.D. TEX, LOCAL R. APP'X L. Indeed, the actual scheduling order

---

[11] *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003).

issued in this case does not include that language at all but only states that the deadline to amend the pleadings is October 28, 2011.

Having not provided any waiver of the presumptive requirement of leave to amend, the district court was well within its right to require such leave. And, in fact, the language in the sample scheduling order shows that the default presumption is that leave to amend is required. There are no cases that support the Priesters' broad reading of Rule 16(b), which would allow unlimited amendments so long as a scheduling order did not explicitly require leave to amend. The court was justified in striking the amended complaints.

Moreover, the court correctly struck the amended complaints because they sought to join non-diverse parties. The district court "must scrutinize an amendment [to a pleading] that would add a non-diverse party more closely than an ordinary amendment." *Short v. Ford Motor Co.*, 21 F.3d 1107 (5th Cir. 1994). This is because "the court's decision will determine the continuance of jurisdiction." *Id.*

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). The court should "use its discretion in deciding whether to allow that party to be added." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). This court in *Hensgens* pointed out factors to consider in determining whether to permit joinder of non-diverse parties, including "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.*

The district court weighed each of the *Hensgens* factors and found that the balance was in favor of denying amendment. It concluded that the Priesters were adding the additional defendants to defeat jurisdiction, that they were

slightly dilatory, that they would not be injured by denial, and that the balance of the equities weighed in favor of denial. The court thus applied the correct legal standard, and its findings of fact were not clearly erroneous. It did not abuse its discretion in striking the amended complaints.

The judgment of dismissal is AFFIRMED.