Lisa KRAMER, Plaintiff–Appellant,

v.

JP MORGAN CHASE BANK, N.A.,
Defendant–Appellee.

No. 13–50920.

United States Court of Appeals,
Fifth Circuit.

June 25, 2014.

Joseph Paul Webber, Austin, TX, for Plaintiff–Appellant.

Marcie Lynn Schout, Esq. William Lance Lewis, Esq. Quilling, Selander, Lownds, Winslett & Moser, P.C. Dallas, TX, for Defendant–Appellee.

Before STEWART, Chief Judge, and HIGGINBOTHAM and ELROD, Circuit Judges.

PER CURIAM: *

Plaintiff–Appellant Lisa Kramer sued Defendant–Appellee JP Morgan Chase Bank, N.A. ("Chase") alleging violations of state law based on a home equity line of credit issued by Chase to Bryan Kastleman, Kramer's then-husband. The district court granted summary judgment in favor of Chase on all claims. For the reasons herein, we AFFIRM.

## FACTS AND PROCEEDINGS

On February 11, 2005, Kastleman executed a Home Equity Line of Credit Agreement and Disclosure Statement (the "Note") with Chase for a line of credit up to $250,000 secured by property the couple used as a homestead. In order to secure the Note, Kastleman and Kramer executed a Texas Home Equity Open–Ended Deed of Trust ("Deed of Trust"). As a condition of extending the line of credit, Chase expressly required that Kramer, as Kastleman's spouse, execute the Deed of Trust and a Notice of Right to Cancel ˙at the closing. These documents contain a signature for Kramer and were notarized by a Notary Public, Margie Shelnutt. Following the closing of the loan, Chase provided $250,000 to Kastleman per the terms of the Note. At some point in August 2008 when Kramer and Kastleman were considering selling the homestead, Kramer states she first discovered from her realtors the loan and second lien. Kramer claims that she never signed any of these loan documents or the Notary's notebook and that these signatures were fraudulent and forged. Kramer and Kastleman's divorce finalized in 2011.

Kramer filed this lawsuit on July 10, 2012 in Texas state court bringing the following claims against Chase: (1) violation of Tex. Const. art. XVI § 50(a)(6)(Q)(xi) because the loan documents were forged; (2) violation of Tex. Const. art. XVI § 50(a)(6)(N) because the loan was not closed at the office of the lender, a title company, or an attorney; (3) quiet title; (4) fraudulent presentment pursuant to Tex. Civil Prac. & Rem.Code Ann. § 12.002(a); and (5) civil conspiracy. Kramer sought *inter alia* a declaratory judgment, actual damages, exemplary and special damages, costs of court, and attorney's fees. On August 1, 2012, Chase removed the case to federal district court. Kramer subsequently made a $249,910.71 payment by personal check during the pendency of this lawsuit to pay off the amount owed to Chase. She did so to preclude the possibility of a receiver being appointed to sell the property in order to pay off Chase's lien.

Chase moved for summary judgment. Kramer responded but did not oppose summary judgment on her claims for quiet title, civil conspiracy, and declaratory judgment. She presented the testimony of a handwriting expert, who confirmed that the signatures were fraudulent. She also presented testimony that the signature in the Notary's book clearly misspelled her last name. Kramer argued that Shelnutt, who notarized the documents at issue, repeatedly violated state law in conducting her notarizations. Further, according to Kramer, Shelnutt admitted to correcting the driver's license entry from TX to CA in her Notary notebook for Kramer's signature prior to her deposition.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On September 9, 2013, the district court granted summary judgment to Chase on all of Kramer's claims. First, the district court granted summary judgment on the claims Kramer did not contest—quiet title and civil conspiracy claims and her request for declaratory relief.[1] Next, the district court concluded that Kramer's claims based on the Texas Constitution were barred by the residual four-year statute of limitations, and in the alternative, Kramer's claim based on Section 50(a)(6)(N) failed because Kramer failed to support it with any evidence. Further, Kramer's fraudulent presentment claim was moot because the sole relief sought, invalidation of the lien, was unnecessary due to the release of the lien. In the alternative, the district court held that Kramer presented no evidence that Defendant knew the documents were fraudulent or intended to cause Kramer injury, both of which are necessary to sustain the claim. Kramer timely appealed the district court's summary judgment on her Texas Constitution and fraudulent presentment claims.

## DISCUSSION

We review the district court's grant of summary judgment de novo, applying the same standards as the district court. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir.2013). Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). When a reasonable jury could return a verdict for the non-moving party a genuine issue of material fact exists. *Haverda*, 723 F.3d at 591. However, "the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *Ballard v. Devon Energy Prod. Co.*, 678 F.3d 360, 365 (5th Cir.2012). All facts and evidence must be considered in the light most favorable to the nonmoving party. *Haverda*, 723 F.3d at 591. We "may affirm the district court's decision on any basis presented to the district court." *Id.* (citation and internal quotation marks omitted).

### A. Texas Constitution Article XVI § 50(a)(6) Claims

Kramer brings two claims based on Article XVI Sections 50(a)(6)(N) and 50(a)(6)(Q)(xi) of the Texas Constitution. Section 50(a)(6)(N) provides that the closing must occur "at the office of the lender, an attorney at law, or a title company." Tex. Const. art. XVI § 50(a)(6)(N). Section 50(a)(6)(Q)(xi) provides that as a condition of the extension of credit, any holder of the note or the lender "shall forfeit all principal and interest ... if ... the lien was not created under a written agreement with the consent of each owner and each owner's spouse, unless each owner and each owner's spouse who did not initially consent subsequently consents." Tex. Const. art. XVI § 50(a)(6)(Q)(xi). Section 50(a)(6)(Q)(x) provides that "except as provided by Subparagraph (xi) of this paragraph" the lender "shall forfeit all principal and interest of the extension of credit" if the lender receives notice by the borrower of a failure to comply with the lender's obligations and the lender fails to cure the deficiency within 60 days of such notice. Tex. Const. art. XVI § 50(a)(6)(Q)(x). Prior to 2003, Section 50(a)(6)(Q)(x) provided that the lender had a reasonable time to cure violations of the loan requirements once given notice by the

---

1. Kramer does not contest this decision on appeal; therefore, we do not address the summary judgment on these claims.

borrower. *Williams v. Wachovia Mortg. Corp.*, 407 S.W.3d 391, 394 (Tex.App.-Dallas 2013, writ denied). There were no time limitations or specific requirements for curing a violation. *Id.* Amendments made in 2003 set these limitations and added provisions such as section 50(a)(6)(Q)(xi). *Id.*

Because our jurisdiction is based on diversity of citizenship, "the laws of Texas as interpreted by Texas authorities" apply. *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 672 (5th Cir.2013). We must look first "to the text of the Texas Constitution and any decisions of the Texas courts in interpreting these provisions." *Id.* "Although not controlling, 'decisions of Texas intermediate appellate courts may provide guidance.'" *Id.* (citation omitted). There is no specific statute of limitations set for claims in Section 50(a)(6). *Williams*, 407 S.W.3d at 394. "In Texas, when there is no express limitations period, the residual four-year statute of limitations described in section 16.051 of the Texas Civil Practice and Remedies Code applies." *Id.*

Importantly, we held in *Priester* that the residual four-year statute of limitations applied "to constitutional infirmities under Section 50(a)(6)." 708 F.3d at 674. Addressing when these constitutional claims accrue for purposes of applying the residual statute of limitations, we held that the "legal injury rule applies to the creation of unconstitutional liens." [2] *Id.* at 675. Therefore, a cause of action for these violations accrues when the home equity loan in question closes and the lien is created. *Id.* at 675–76.

■ The district court concluded that based on our precedent in *Priester*, the four-year residual statute of limitations applied to Kramer's Section 50(a)(6)(N) and Section 50(a)(6)(Q)(xi) claims. The district court held that the discovery rule for accrual of a statute of limitations is inapplicable to these claims based on *Priester*, and therefore, the claims accrue at the time the injury occurs and not at the time the plaintiff discovers the injury. Kramer's injury occurred when the lien was created in 2005 and she waited until 2012 to bring the instant suit, well outside of the four-year statute of limitations.

Kramer argues that the district court failed to account for significant differences between this case and *Priester*. She argues that the lien on her homestead was void and not voidable because the loan documents at issue were forged. Therefore, according to Kramer, the residual statute of limitations is altogether inapplicable. Even if it applies, she asserts that our precedent in *Vanderbilt Mortg. & Fin. Inc. v. Flores*, 692 F.3d 358 (5th Cir.2012) is applicable and the discovery rule should apply. In *Vanderbilt*, we upheld the application of the discovery rule to Chapter 12 of the Texas Civil Practice and Remedies Code claims, which prohibit the filing of false liens. 692 F.3d at 368–70. Kramer distinguishes *Priester* by arguing that the cure provision in Section 50(a)(6)(Q)(x) was integral to the holding and there is no similar provision to cure the violations that occurred here. Because the violation is not curable unilaterally by the lender, *Priester* is inapplicable. Further, accord-

---

**2.** The "legal injury" rule is the generally applicable rule in Texas and means that "[c]auses of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Priester*, 708 F.3d at 675 (citation and internal quotation marks omit-

ted). An exception to this generally applicable rule is the "discovery rule," which "operates to defer accrual of a cause of action until the plaintiff knows, or, by exercising reasonable diligence, should know of the facts giving rise to the claim." *Id.* (citation and internal quotation marks omitted).

ing to Kramer, *Priester* left open the question of whether in the specific circumstance where a homeowner who can establish a total lack of knowledge of the injury at the time the injury occurs, through no fault of the homeowner, the discovery rule should apply.

As an initial matter, Kramer's Section 50(a)(6)(N) claim is one of the same claims that the plaintiffs in *Priester* brought in that case. 708 F.3d at 672–73. Therefore, *Priester* very clearly forecloses any argument that the statute of limitations does not apply and that the discovery rule of accrual should apply for Kramer's Section 50(a)(6)(N) claim.[3] *See id.* at 674–75. The four-year residual statute of limitations and the legal injury rule for accrual apply to Kramer's Section 50(a)(6)(N) claim. She filed this claim in 2012, seven-years after the alleged violation, and therefore, this claim is time-barred. Our discussion hereinafter applies only to Kramer's Section 50(a)(6)(Q)(xi) claim.

To the extent Kramer argues that the statute of limitations is altogether inapplicable to her Section 50(a)(6)(Q)(xi) claim, that issue has also clearly been foreclosed by *Priester.* Our holding in *Priester* was premised, at least in part, on the fact that a loan originating in violation of the home equity provisions of the Texas Constitution was curable, and therefore, voidable. *See Priester,* 708 F.3d at 674. We relied on the Texas Supreme Court to support this determination. *Id.* (stating that "the Texas Supreme Court considers liens created *in violation of section 50(a)(6) requirements* to be voidable rather than void" (emphasis added)). Despite Kramer's assertion otherwise, her Section 50(a)(6)(Q)(xi) claim is curable by its own

terms, which provide that a spouse may "subsequently consent." Tex. Const. art. XVI § 50(a)(6)(Q)(xi). Although *Priester* did not address Section 50(a)(Q)(xi) claims based on fraud, its reasoning is binding on this court and equally applicable in these circumstances. The four-year residual statute of limitations applies to Kramer's 50(a)(Q)(xi) claim.

Kramer's arguments that *Vanderbilt* and the discovery rule for accrual should apply to her claim are unavailing. *Vanderbilt* is distinguishable from this case. In *Vanderbilt,* we applied the discovery rule of accrual to a statutory claim—which prohibits the filing of a false lien—but did not address any claims based on violations of the Texas Constitution in creating that lien. *See* 692 F.3d at 366–70. *Priester* subsequently determined the accrual rules for these constitutional claims. Additionally, the injury in that case—the filing of a fraudulent lien against a property interest—was "inherently undiscoverable" because the owners were under no obligation to search property records for fraudulent liens filed by third parties. *Id.* at 369. Similarly, Kramer may not be so obligated based on *Vanderbilt;* however, *Priester* provides the most applicable framework for deciding this issue.

*Priester* applied the legal injury rule broadly "to the creation of unconstitutional liens." 708 F.3d at 675. Although language in *Priester* suggests that essential to this holding was the fact that "there was nothing that made the injury undiscoverable," such a statement does not support a different holding in this case. *See id.* at 676. Kramer's injury—the execution of a home equity loan without the consent of an owner's spouse—is not "inherently undis-

---

**3.** Having concluded that this claim is time-barred, we need not address Kramer's arguments against the district court's alternative holding that she provided insufficient evidence to withstand summary judgment that the loan closed in an unauthorized location in violation of Section 50(a)(6)(N).

coverable." *See S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex.1996) (holding that under Texas law, an injury is considered "inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence"). Due diligence could have uncovered the violation of which Kramer complains. Such a determination is further supported by the fact that she did actually discover the violation prior to the expiration of the statute of limitations in 2008. *See id.* ("The common thread in [cases applying the discovery rule] is that ... the wrong and injury were unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff...."). Given the broad language in *Priester* and Kramer's ability to discover the injury complained of, we conclude that the discovery rule is inapplicable to Kramer's Section 50(a)(6)(Q)(xi) claim. Therefore, Kramer's Section 50(a)(6)(Q)(xi) claim is also time-barred.

## B. Fraudulent Presentment Claim

Kramer also brought a claim pursuant to Tex. Civil Prac. & Rem.Code Ann. § 12.002(a) for fraudulent presentment of the lien.[4] A person who violates Section 12.002(a) is liable to each injured person for the greater of $10,000 or the actual damages caused by the violation as well as court costs, reasonable attorney's fees, and exemplary damages. Tex. Civ. Prac. & Rem.Code Ann. § 12.002(b). In Kramer's

pleadings, she specifically requests declaratory relief and not damages on this claim. The "Prayer" section of her complaint does contain a boilerplate request for damages. However, in her initial disclosures, she only sought $250,000 in damages—the principal and interest on the loan—which she would be entitled to from her constitutional claims but not from this statutory claim. Further, in her responses, she identified her damages only as her "constitutional damages" of $250,000. The district court concluded that because Kramer represented throughout the litigation that she was seeking only declaratory relief under her Section 12.002(a) claim, the release of the lien mooted this claim and Defendant was entitled to summary judgment. Alternatively, the district court stated that Kramer's Section 12.002(a) claim failed on the merits.

The mootness doctrine limits courts to deciding cases in which an actual controversy exists. *K.P. v. LeBlanc*, 627 F.3d 115, 120 (5th Cir.2010). Mootness is a part of the standing inquiry applicable to all suits in federal court and is jurisdictional. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524–25 (5th Cir.2008). "As a general rule, 'any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot.'" *Id.* at 527 (citation omitted). "Texas courts have rejected the argument that a *Chapter 12 damages claim* is mooted when a defendant unilaterally

---

4. Tex. Civ. Prac. & Rem.Code Ann. § 12.002 provides in relevant part that:
    (a) A person may not make, present, or use a document or other record with:
    (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
    (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or

established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
    (3) intent to cause another person to suffer:
    (A) physical injury;
    (B) financial injury; or
    (C) mental anguish or emotional distress.

releases an allegedly fraudulent lien after the claim was filed but before trial or final judgment." *Vanderbilt*, 692 F.3d at 370 (emphasis added) (citation omitted). "[S]tanding for a party complaining of a concrete past violation of a statutory right does not evaporate merely because the defendant has since ceased to violate that right." *Id.*

■ We agree with the district court that under these specific circumstances Kramer's Section 12.002(a) claim is moot. Kramer argues that *Vanderbilt* rejected the argument that the district court accepted; however, *Vanderbilt* very clearly applies only to a Chapter 12 damages claim. *See id.* Kramer throughout this litigation has failed to seek damages pursuant to this statute. The boilerplate language in the "Prayer" section of her complaint and her later general request for "attorney's fees and costs" cannot sustain this as a damages claim. Her initial disclosures and interrogatories effectively confirm what was pled in her complaint: she sought only declaratory relief under this statute. That relief—the only relief that she sought for this claim—has been given by Chase, and therefore, her claim is moot. *See Envtl. Conservation Org.*, 529 F.3d at 527 ("A case should not be declared moot '[a]s long as the parties maintain a concrete interest in the outcome and effective relief is available to remedy the effect of the violation....'" (citation omitted)). Summary judgment for Chase is proper.

■ Even if the claim were not moot, Kramer · has failed to demonstrate that there is a genuine issue of material fact on two elements of this claim: (1) knowledge by Chase of the constitutional violations; and (2) Chase's intent to cause her to suffer injury. *See* Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a)(1), (3). Kramer has failed to demonstrate, and does not argue on appeal, that Chase had knowledge that the documents were forged. Further, Kramer cannot point to any evidence demonstrating that Chase knew the closing occurred at an unauthorized location.[5] Kramer has also failed to demonstrate that Chase intended to cause her injury. Her assertions to the district court and to this court concerning this element are wholly conclusory.[6] Thus, Kramer has failed to demonstrate a genuine issue of material fact on two necessary elements of her claim, and therefore, Chase is · entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's summary judgment to Chase in all respects.

---

**5.** The evidence Kramer cites to support that the closing occurred in Rochester, New York is inapposite. Specifically, the correspondence between Kastleman and Chase suggests only that additional conditions or correspondence was sent to an address in Rochester, not that the closing occurred there. Second, the correspondence establishes that the settlement or closing agent was National Equity Services, which had an address in Rochester. This does not establish the location of the actual closing.

**6.** She argued in her brief only that: "[Chase] intended to cause Lisa Kramer (whom [Chase] knew full well was the co-owner of the homestead subject to Defendant's lien) 'financial injury.'"