# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2015

Lyle W. Cayce
Clerk

No.  14-50261

EDUARDO NUNEZ; MARICELA NUNEZ,

Plaintiffs - Appellants

v.

CITIMORTGAGE, INCORPORATED, Successor by merger to ABN AMRO
Mortgage Group, Inc.,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No.  1:14-CV-89

Before DAVIS, JONES, and CLEMENT, Circuit Judges.

PER CURIAM:*

Eduardo and Maricela Nunez appeal the district court's judgment in favor of CitiMortgage, Inc.  The Nunezes brought this action in Texas state court under article XVI, section 50(a)(6) of the Texas Constitution, challenging the validity of a home equity loan they obtained in 2006 from CitiMortgage's predecessor in interest, ABN AMRO Mortgage Group ("AAMG").  The district

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No.  14-50261

court dismissed the Nunezes' complaint because the statute of limitations had run.  Finding no error, we AFFIRM the district court's judgment.

## I.

The Nunezes took out a home equity loan in 2006 and simultaneously executed a home equity Deed of Trust to AAMG.  In 2014, the Nunezes brought this suit seeking a declaratory judgment that the loan and accompanying lien were void *ab initio* because AAMG did not possess the requisite state license when it issued the loan.  Specifically, they argue that AAMG was required to obtain a license from the Office of Consumer Credit Commissioner ("OCCC") pursuant to section 50(a)(6)(P)(iii).[1]   By issuing the loan without the requisite license, the Nunezes argue, AAMG failed to comply with the requirements in section 50 of the Texas Constitution, rendering the loan and lien void *ab initio*.  Consequently, AAMG (now CitiMortgage) forfeited its right to collect on the debt, forfeited its lien, and could not lawfully foreclose upon their home.  CitiMortgage removed the case to federal district court and moved for 12(b)(6) dismissal.  The district court granted CitiMortgage's motion to dismiss with

---

[1]  The Texas Constitution states that a lender "shall forfeit all principal and interest" of a loan that is made by "a person other than a person described under Paragraph (P)." Tex. Const. art. XVI, § 50(a)(6)(Q)(xi).   The Nunezes interpret this provision to impose a requirement that AAMG possess a state license.   However, an OCCC license is not the exclusive means through which an entity can obtain authorization to issue loans.   In fact, section 50(a)(6)(P) lists six types of entities that are authorized to originate loans:

(i)     a bank, savings and loan association, savings bank, or credit union doing business under the laws of this state or the United States;

(ii)    a federally chartered lending instrumentality or a person approved as a mortgagee by the United States government to make federally insured loans;

(iii)   a person licensed to make regulated loans, as provided by statute of this state;

(iv)    a person who sold the homestead property to the current owner and who provided all or part of the financing for the purchase;

(v)     a person who is related to the homestead property owner within the second degree of affinity or consanguinity; or

(vi)    a person regulated by this state as a mortgage broker;

Tex. Const. art. XVI, § 50(a)(6)(P).

No.  14-50261

prejudice on the ground that the Nunezes' claims were time-barred because they were brought after the four-year limitations period had expired.  The couple timely appealed.

## II.

This court reviews *de novo* the district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6).  *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).  To survive a 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When a complaint asserts a claim that is time-barred, the claim may be dismissed pursuant to 12(b)(6).  *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred."); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) (noting that a court may dismiss a claim pursuant to Rule 12(b)(6) when, for example, the "allegations, taken as true, . . . . Show that relief is barred by the applicable statute of limitations").

## III.

The Nunezes contend that their claims under article XVI, section 50(a)(6)(P) of the Texas Constitution are not subject to a statute of limitations.  They present several arguments in an attempt to escape dismissal, however, the thrust of their appeal is that this court's recent precedent, *Priester*, was wrongly decided and should not be controlling.  *See Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013).  Alternatively, they assert that *Priester* is distinguishable on its facts.

### A.

This court's jurisdiction is based on diversity of citizenship, so the court applies Texas law as interpreted by Texas authorities.  *Id.* at 672 (citing *Erie*

No. 14-50261

*R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938)).  When interpreting these provisions we first look to the Texas Constitution and the decisions of the Texas courts.  *Id.*  Texas intermediate court decisions, while not controlling, provide a source of useful guidance.  *Packard v. OCA, Inc.*, 624 F.3d 726, 729–30 (5th Cir. 2010).  The Texas Constitution does not specify whether claims brought under section 50(a)(6) are subject to a statute of limitations, and the Texas Supreme Court has yet to address this precise question.  *See Priester*, 708 F.3d at 673.  However, section 16.051 of the Texas Civil Practice and Remedies Code provides that "[e]very action for which there is no express limitations period . . . must be brought not later than four years after the day the cause of action accrues."  Tex. Civ. Prac. & Rem. Code 16.051.  As this court has repeatedly emphasized, this four-year limitations period applies "to constitutional infirmities under Section 50(a)(6)."  *Priester*, 708 F.3d at 674; *see also Smith v. JP Morgan Chase Bank, N.A.*, 594 F. App'x 221, 222–23 (5th Cir. 2014) (noting that "subsequent Texas decisions have followed *Priester*'s reasoning and validated its holding").  Claims brought under section 50 accrue from the date of the legal injury, and the limitations period runs from the date of the loan's closing. *Id.* at 675.

With these principles in mind, we agree with the district court that the Nunezes' limitations period has run.  The Nunezes obtained the loan on December 15, 2006, but filed suit over seven years later, on January 7, 2014.  On the face of the petition, the limitations period has run, barring the Nunezes from pursuing this action.

**B.**

Appellants argue, however, that our decision in *Priester* is impermissibly broad, fails to account for "well-settled Texas law," and runs contrary to the original intent of the drafters of the Texas Constitution.  Accordingly, they invite us to reassess its validity.

4

The argument that *Priester* is not controlling holds little sway, as this court has repeatedly held.  *See Thompson v. Deutsche Bank Nat'l Trust Co.*, 775 F.3d 298, 307 (5th Cir. 2014) (applying the four-year limitations period to constitutional infirmities alleged under section 50(a)(6)) (citing *Priester*, 708 F.3d at 674); *Smith*, 594 F. App'x at 222 ("As three other panels have previously noted, there has been no change in the law that would allow us to overturn the *Priester* decision.").

The Nunezes also claim that *Priester* goes against well-settled Texas law. On the contrary, several state intermediate appellate courts have adopted *Priester*'s holding and affirmed its validity.  *See Williams v. Wachovia Mortg. Corp.*, 407 S.W.3d 391, 397 (Tex. App.—Dallas 2013, pet. denied) (adopting *Priester*'s reasoning that "because a cure provision exists in the Texas Constitution, homestead liens that are contrary to the constitutional requirements are *voidable* rather than void from the start[.]") (emphasis in original); *Santiago v. Novastar Mortg., Inc.*, 443 S.W.3d 462, 470 (Tex. App.— Dallas 2014) (explaining that *Priester* supports "our conclusion that liens created in violation of section 50(a)(6) were voidable rather than void."); *In re Estate of Hardesty*, 449 S.W.3d 895 (Tex. App.—Texarkana 2014) ("We adopt the reasoning of *Priester* and that of our sister courts."); *Wood v. HSBC Bank USA, N.A.*, 439 S.W.3d 585 (Tex. App.—Houston[14th Dist.] 2014, pet. filed) ("We too find the *Priester* court's analysis persuasive") (citations omitted).

Finally, "[i]t is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by statutory amendment, or the Supreme Court, or our *en banc* court." *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).  As recently as November 2014, this court has found no occasion to revisit the holding in *Priester. See Smith v. JP Morgan Chase Bank, N.A.*, No. 14-10555, 2014 WL 5658947, at *1 (5th Cir. Nov. 5,

No.  14-50261

2014); *Stretcher v. Bank of America, N.A.*, 574 F. App'x 474, 474–75 (5th Cir. 2014) ("The Stretchers attempt to avoid dismissal by arguing that *Priester* was wrongly decided. . . . [W]e have no occasion to revisit *Priester*.").[2]  Because *Priester* is controlling, we need not address the Nunezes' contention that *Priester* was wrongly decided.

## C.

The Nunezes contend, in the alternative, that if *Priester* remains good law, it is factually distinguishable.  First, they distinguish *Priester* as having "solely addressed a curable lien," whereas the alleged "attempted lien" in this case cannot be cured because it was void *ab initio* due to the lender's lack of constitutionally required license.  Under this reasoning, such a constitutional infirmity is not curable, thus undermining the rationale behind imposing a statute of limitations.  This argument, however, is fundamentally inconsistent with our position in *Priester* that a constitutionally infirm "lien . . . is voidable from the day of creation; the legal injury occurs at a definite point in time." 708 F.3d at 676 & n.6.

Next, the Nunezes argue that our unpublished opinion in *Kramer v. JP Morgan Chase Bank, N.A.* undermines an application of *Priester* for the broad proposition that all section 50(a)(6) claims are subject to the statute of limitations.  574 F. App'x 370 (5th Cir. 2014).  In *Kramer*, the plaintiff alleged constitutional infirmities based on two provisions under section 50(a)(6).  The first claim was summarily dismissed by the court because it was "the same claim[] that the plaintiffs in *Priester* brought in that case.  Therefore, *Priester* very clearly forecloses any argument that the statute of limitations does not apply [to that provision]." *Kramer*, 574 F. App'x at 374.  Kramer's second claim

---

[2] In fact, this argument has been raised so frequently that the court in *Smith* noted that it "borders on frivolity" for counsel to continue to raise the argument on appeal after the issue has been decided by a panel of this court. *Smith*, 594 F. App'x at 223.

was under section 50(a)(6)(Q)(xi), a provision *Priester* did not explicitly mention. Concluding that the limitations period also applied to Kramer's second claim, the court noted that the "holding in *Priester* was premised, at least in part, on the fact that a loan originating in violation of the home equity provisions of the Texas Constitution was curable, and therefore voidable." *Id.* Since Kramer's claim was plainly curable, the court found *Priester*'s rationale applicable. *Id.*

Because *Kramer* appears also to consider the "curability" of a defect under this provision when a court determines whether the statute of limitations applies, the Nunezes read it to suggest a narrower interpretation of *Priester*—one that applies only to provisions that are "curable, and therefore, voidable," rather than to section 50(a)(6) claims uniformly. *Id.* We disagree. The curability of a lien defect does not affect *Priester*'s undisputed holding.[3] *See Williams*, 407 S.W.3d at 397 (dismissing arguments that 50(a)(6) provisions cannot be cured "[as] undermined by not only *Priester* but the Texas Supreme Court's broad pronouncement in . . . *Doody* that 'section 50(a)(6)(Q)(x) is a cure provision that applies to *all* of section 50(a)'") (citing *Doody v. Ameriquest Mortg. Co.*, 49 S.W.3d 342, 345-46 (Tex. 2001).

Our post-*Kramer* published, precedential opinion in *Thompson v. Deutsche Bank Nat'l Trust Co.* provides further support. 775 F.3d 298 (5th Cir. 2014). In *Thompson*, the plaintiffs alleged violations of sections 50(a)(6)(Q)(v), (Q)(vi), (Q)(viii) and (Q)(ix). Although *Priester* did not specifically address each of these provisions, the court applied *Priester*'s broad holding to all constitutional infirmities alleged under section 50(a)(6). As the court explained, "[w]e can unmistakably discern that the limitations period has run

---

[3] Furthermore, the Nunezes provide no arguments or authorities to suggest that the provision at issue here, section 50(a)(6)(P)(iii), is distinguishable as one that cannot be cured.

No.  14-50261

by consulting the face of the petition," which stated that the loan was entered into in March 2006 and the petition was not filed until April 2012.  *Id.* at 307. This case is analogous to *Thompson*.

Because the district court correctly dismissed the claim here as barred by limitations, we need not address CitiMortgage's alternative grounds for upholding the dismissal.  The judgment of the district court is **AFFIRMED**.