
FILED
**March 9, 2015**
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-14-00721-CV
4203141
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/18/2015 6:23:44 PM
JEFFREY D. KYLE
CLERK

**No. 03-14-00721-CV**

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**Raul Martinez,**
*Appellant,*

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/18/2015 6:23:44 PM
JEFFREY D. KYLE
Clerk

v.

**Deutsche Bank National Trust Company as Trustee for Ameriquest Mortgage Securities, Inc.; Asset-Backed Pass-Through Certificates Series 2003-6; Homeward Residential, Inc.; and Juanita Strickland,**
*Appellees.*

ON APPEAL FROM THE 201ST JUDICIAL DISTRICT COURT, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. D-1-GN-13-001195

## APPELLANT'S BRIEF

WILLIAM B. GAMMON, SBN: 07611280
KARLA HUERTAS, SBN: 24087765
**GAMMON LAW OFFICE, PLLC.**
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Phone: 512-444-4529
Fax: 512-545-4279
Firm@GammonLawOffice.com
COUNSEL FOR APPELLANT

No. 03-14-00721-CV

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**Raul Martinez,**
*Appellant,*

v.

**Deutsche Bank National Trust Company as Trustee for Ameriquest Mortgage Securities, Inc.; Asset-Backed Pass-Through Certificates Series 2003-6; Homeward Residential, Inc.; and Juanita Strickland,**
*Appellees.*

ON APPEAL FROM THE 201ST JUDICIAL DISTRICT COURT, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. D-1-GN-13-001195

**APPELLANT'S BRIEF**

WILLIAM B. GAMMON, SBN: 07611280
KARLA HUERTAS, SBN: 24087765
**GAMMON LAW OFFICE, PLLC.**
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Phone: 512-444-4529
Fax: 512-545-4279
Firm@GammonLawOffice.com
COUNSEL FOR APPELLANT

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

*Appellant:*

*Raul Martinez*

*Appellant's Counsel:*
WILLIAM B. GAMMON, SBN: 07611280
KARLA HUERTAS, SBN: 24087765
GAMMON LAW OFFICE, PLLC.
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Phone: 512-444-4529
Fax: 512-545-4279
Firm@GammonLawOffice.com

*Appellees:*

*Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities, Inc.; Asset-Backed Pass-Through Certificates Series 2003-6; and Homeward Residential, Inc.*

*Appellees' Counsel:*
WILL G. BASSHAM, SBN: 24073894
JEREMY J. OVERBEY, SBN: 24046570
SETTLEPOU
3333 Lee Parkway, Eighth Floor
Dallas, Texas 75219
Phone: 214-520-3300
Fax: 214-526-4145

*Appellee:*

*Juanita Strickland*
130 Encino Loma,
Killeen, TX 76542

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................3

TABLE OF CONTENTS.................................................................................4

TABLE OF AUTHORITIES ............................................................................5

STATEMENT OF THE CASE..........................................................................8

RECOMMENDATION ON ORAL ARGUMENT................................................10

ISSUES PRESENTED...................................................................................11

STATEMENT OF THE FACTS ......................................................................12

SUMMARY OF THE ARGUMENT .................................................................14

ARGUMENT AND AUTHORITIES.................................................................15

    **A. STANDARD OF REVIEW- TEX. R. CIV. P. 166A. ...........................15**

    **B. THERE EXIST GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER STATUTE OF LIMITATIONS APPLIES TO MARTINEZ'S HOME EQUITY LIEN.16**

        *i. Constitutionally defective liens are void and not time-barred. ...............17*

        *ii. The District Court erred in finding that Appellant's suit was untimely filed because statute of limitations did not begin to run until the date the mortgagee exercised its option to accelerate the loan...........................22*

CONCLUSION...........................................................................................23

PRAYER ...................................................................................................24

CERTIFICATE OF SERVICE ........................................................................25

# TABLE OF AUTHORITIES

## CASES

*Ashland Chem. v. Barco Inc.,*
  123 F.3d 261 (5th Cir. Tex. 1997)........................................................................20

*Collier v. Valley Bldg. & Loan Ass'n,*
  62 S.W.2D 82 (TEX. COMM'N APP. 1933)................................................. 18, 19, 21

*Ditta v. Conte*,
  298 S.W.3d 187 (Tex. 2009) ...............................................................................17

*Doody v. Ameriquest Mortg. Co.*,
  49 S.W.3d 342 (Tex. 2001) ............................................................... 18, 19, 22

*Erie R.R. v. Tompkins,*
  304 U.S. 64 (U.S. 1938) ................................................................... 20, 21

*Exxon Corp. v. Emerald Oil & Gas Co., L.C.,*
348 S.W.3d 194 (Tex. 2011)................................................................................22

*Florey v. Estate of McConnell*,
  212 S.W.3d 439 (Tex. App.-Austin 2006). .........................................................19

*Ford v. ExxonMobil Chem. Co.*,
   235 S.W.3d 615 (Tex. 2007) ................................................................... 16, 19

*Goodyear Tire & Rubber Co. v. Mayes*,
  236 S.W.3d 754 (Tex. 2007) ...............................................................................16

*Hammann v. J.J. McMullen & Co.*,
  62 S.W.2d 59 (Tex. 1933) ...................................................................................23

*Holy Cross Church of God in Christ v. Wolf,*
44 S.W.3d 562 (Tex. 2001)..................................................................................23

*King Ranch, Inc. v. Chapman*,
  118 S.W.3d 742 (Tex. 2003) ................................................................... 15, 16

*Laster v. First Huntsville Props. Co..,*
  826 S.W.2d 125 (Tex. 1991) ...............................................................................17

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,*
289 S.W.3d 844 (Tex. 2009) .................................................................15

*Matter of Daves,*
770 F.2d 1363 (5th Cir. 1985) ...............................................................17

*MMP, Ltd. v. Hones,*
710 S.W.2d 59 (Tex. 1986) ....................................................................15

*Nixon v. Mr. Prop. Mgmt. Co.,*
690 S.W.2d 546 (Tex. 1985) ..................................................................15

*Provident Life & Accident Ins. Co. v. Knott,*
128 S.W.3d 211 (Tex. 2003) ..................................................................15

*Priester v. JPMorgan Chase Bank, N.A.,*
708 F.3d 667 (5th Cir. 2013) ........................................... 19, 20, 21, 22

*Rivera v. Countrywide Home Loans, Inc.,*
262 S.W.3d 834 (Tex. App. – Dallas 2008, no pet.) .............................. 19, 20, 21

*Royal Bank of Canada v. Trentham Corp.,*
665 F.2d 515 (5th Cir. 1981) .................................................................21

*Schanzle v. JPMC Specialty Mortg. LLC,*
2011 Tex. App. LEXIS 1748 (Tex. App. - Austin 2011) ....................... 19, 20, 21

*Slaughter v. Qualls,*
162 S.W.2d 671 (1942) ......................................................... 16, 17, 21

*Thomas v. Graham Mortg. Corp.,*
408 S.W.3d 581 (Tex. App. Austin 2013) .............................................17

**OTHER AUTHORITIES**

TEX. CONST. ART. 16 SECT. 50(A) ...............................................................8, 16, 22

TEX. CONST. ART. 16 SECT. 50(C) ........................................... 17, 18, 21, 22

TEXAS FAIR DEBT COLLECTIONS PRACTICES ACT ....................................................8

TEXAS DECEPTIVE TRADE PRACTICES ACT ...............................................................8

28 U.S.C. § 1652 ....................................................................................21

## RULES

TEX. BUS. & COMM. CODE ANN § 3.118 ................................................................23

TEX. CIV. PRAC. & REM. CODE §12.002 ..............................................................8

TEX. CIV. PRAC. & REM. CODE ANN § 16.035 .....................................................23

TEX. FIN. CODE §342.051 ................................................................................12

TEX. FINANCE CODE §392.301 ..........................................................................8

TEX. FINANCE CODE §392.304 ..........................................................................8

TEX. R. CIV. P. 166 .................................................................................15, 16

TEXAS PROPERTY CODE §15.001 ET SEQ. ...........................................................8

## STATEMENT OF THE CASE

1.01   On April 10, 2013, Appellant, Raul Martinez (hereinafter "Martinez"), filed suit against the Appellees, Deutsche Bank National Trust Company as Trustee for Ameriquest Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates Series 2003-6 (hereinafter "Deutsche Bank"), Homeward Residential, Inc. (hereinafter "Homeward Residential), and Juanita Strickland[1] (hereinafter "Strickland") in the 201st Judicial District of Travis County, Texas claiming: (1) wrongful foreclosure; (2) violations of the Texas Constitution Art. 16, Sec. 50(a)(6); (3) violations of the Texas Fair Debt Collections Practices Act (hereinafter "TDCPA"); (4) violations of Texas Deceptive Trade Practices Act (5) violations of Texas Property Code §15.001 et seq.; (6) violations of Tex. Finance Code §392.301; (7) violations of Tex. Finance Code §392.304; and (8) violations of Tex. Civ. Prac. & Rem. Code §12.002 (CR 3 – 53).

1.02   On August 21, 2014, Appellants Deutsche Bank and Homeward Residential moved for traditional and no-evidence summary judgment (CR 64 – 195). The motion alleged that no issues of material fact exist as to any of Martinez's claims and that Martinez's claim that the loan violated provisions of the Texas Constitution for home equity loans is barred by statute of limitations.

---

[1] To date, Strickland has not made an appearance in this suit.

1.03  On October 28, 2014, the Honorable Gisela Triana entered an Order that dismissed all of Martinez's claims against Deutsche Bank and Homeward Residential (CR 292 - 294). It is from this Order that Martinez appeals.

## RECOMMENDATION ON ORAL ARGUMENT

Martinez suggests that the issue presented should not be determined on the record alone and that oral argument is necessary. The issues presented have become sufficiently muddled by misinterpretation and the law sufficiently misapplied that oral argument would benefit the panel.

*/s/ William B. Gammon*
William B. Gammon

**TO THE HONORABLE THIRD DISTRICT COURT OF APPEALS:**

Appellant, Raul Martinez, pleads that this honorable Court of Appeals reverse the judgment of the 201st Judicial District Court and remand this case for further proceedings.

## ISSUES PRESENTED

2.01 Did the trial court abuse its discretion by inappropriately applying the law to determine that Appellant is barred by the statute of limitations and err in granting summary judgment because genuine issues of material fact exist as to whether statute of limitations apply to Appellant's void home equity lien?

## STATEMENT OF THE FACTS

3.01   On December 13, 2002, Martinez took out a home equity loan on his real property at 6550 Fair Valley Trail, Austin, Texas 78749 (hereinafter "the Property") from Ameriquest Mortgage Company (hereinafter "Ameriquest"). As security for the loan, Martinez executed a Deed of Trust in favor of Ameriquest (CR 16 - 32). This document was duly recorded on December 26, 2002, in the property records of Travis County, Texas. At the time the Deed of Trust was executed, Ameriquest's branch location identified on the Deed of Trust was not licensed to make regulated loans as required by Tex. Fin. Code §342.051. By issuing loans without a license, Ameriquest automatically forfeited all principal and interest under the loan. Absent a debt there is no lien. Accordingly, Ameriquest possessed neither a debt nor a valid lien to transfer to any successor.

3.02   Despite possessing no rights under the loan, on February 22, 2007, Ameriquest purported to assign its rights in Martinez's security instrument to Deutsche Bank (CR 33 – 34). Then, on July 20, 2011, Deutsche Bank purported to assign its rights in Martinez's security instrument to itself, arguably to correct a faulty assignment (CR 35 – 36).

3.03   Thereafter, Homeward Residential, allegedly acting as "servicer in fact" for Deutsche Bank, appointed Juanita Strickland and Janie Mucha to act as substitute trustees. The substitute trustees declared a default under the note and Deed of Trust

and initiated foreclosure proceedings against Martinez.

3.04 On November 6, 2012, Homeward Residential and/or Deutsche Bank conducted an illegal foreclosure sale, subsequently filing an unlawful substitute trustee's deed in the Travis County property records in favor of Deutsche Bank (CR 49 – 50). However, the instrument appointing the substitute trustees was not recorded, and therefore ineffective, if at all, until November 13, 2012, a week after the foreclosure (39 - 40).

## SUMMARY OF THE ARGUMENT

4.01   The trial court abused its discretion in granting Appellees' motion for summary judgment because defective and uncured home equity liens are void and therefore statute of limitations do not apply. Alternatively, should the court find that the lien in this suit is voidable, Appellant's suit was filed timely because statute of limitations did not begin to run until the date the mortgagee exercised its option to accelerate the loan.

## ARGUMENT AND AUTHORITIES

**A. STANDARD OF REVIEW- TEX. R. CIV. P. 166A.**

5.01 A trial court's decision to grant summary judgment is reviewed de novo using the standards for summary judgment set forth in Tex. R. Civ. P. 166a. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-216 (Tex. 2003). In reviewing a grant of summary judgment, a court of appeals must determine whether the successful movant carried its burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In making this decision, a court of appeals takes all evidence favorable to the non-movant as true, and make every reasonable inference in favor of the non-movant, resolving all doubts in his or her favor. *Provident Life & Accident Ins. Co.,* 128 S.W.3d at 215. Where defendant-movant seeks summary judgment on an affirmative defense, it must prove conclusively all elements of that defense. *MMP, Ltd. v. Hones*, 710 S.W.2d 59, 60 (Tex. 1986).

5.02 When a party moves for summary judgment on a no-evidence ground, the court reviews the claim under the same legal sufficiency standard as directed verdicts. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003). Under that standard, evidence is considered in the light most favorable to the non-movant.

*Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007). The non-movant is "not required to marshal [his] proof; [his] response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166. A no-evidence summary judgment is improperly granted if the party responding brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

**B. THERE EXIST GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER STATUTE OF LIMITATIONS APPLIES TO MARTINEZ'S HOME EQUITY LIEN.**

5.03   The primary issue rests on whether a home equity loan that violates Texas Constitution Art. 16, Sec. 50(a)(6) is void or merely voidable at the time of origination. *Slaughter v. Qualls*, 162 S.W.2d 671, 674 (1942) ("it is necessary for us to decide whether the trustee's deed was void or merely voidable in order to determine whether or not the suit was barred by limitation."). This is both a legal and fact question. It is well established under Texas law that a suit to determine rights under a void deed may be brought any time. *Ford v. ExxonMobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007). Only if a deed is voidable does a statute of limitations apply. *Id.*

5.04   The question of whether a deed is void or voidable "depends on its effect upon the title at the time it was executed and delivered." *Slaughter*, 162 S.W.2d at 674. A void deed is without vitality or legal effect and is deemed as "invalid." *Id.*

A voidable deed, by contrast, "operates to accomplish the thing sought to be accomplished, until the fatal vice in the transaction has been judicially ascertained and declared." *Id.* A voidable deed is deemed as "valid."

### i. Constitutionally defective liens are void and not time-barred.

5.05   The Constitution provides that no homestead lien is **ever** valid **unless** it complies with the Constitution. Tex. Const. art. 16 Sect. 50(c); *Thomas v. Graham Mortg. Corp.*, 408 S.W.3d 581, 588 (Tex. App. Austin 2013) ("When a lien that is not constitutionally permitted is placed on homestead property, the lien on the property is void."); *See also Matter of Daves*, 770 F.2d 1363, 1366-67 (5th Cir. 1985) ("Texas Courts have consistently held that a valid lien cannot be created on homestead property in any manner other than in strict compliance with the requirements of the statutes and constitution.").

5.06   Texas courts have continuously followed this longstanding rule that constitutionally defective liens are void, and thus not subject to a statute of limitations. *Laster v. First Huntsville Props. Co..*, 826 S.W.2d 125, 129 (Tex. 1991) ("Any attempt to mortgage homestead property, except as approved by the Texas Constitution, is void."); *Ditta v. Conte*, 298 S.W.3d 187, 192 (Tex. 2009) ("if a cloud on title is void or has expired by its own terms, there is no limitations period on the equitable claim to declare the existing status").

5.07   In 1997, the Constitutional home equity rules were amended to introduce a

cure provision which allows a void lien to be validated if the Constitution provides for such a right. *See Doody v. Ameriquest Mortg. Co*., 49 S.W.3d 342, 346 (Tex. 2001) citing *Collier v. Valley Bldg. & Loan Ass'n*, 62 S.W.2d 82, 84-85 (Tex. Comm'n. App. 1933, holding approved). However, the amendments do not alter the rule that invalid liens are void. When the cure provisions are read in conjunction with Section 50(c), it provides that a lien is void at origination when it does not comply with all the Section 50 requirements; however, lenders have a constitutional right to subsequently cure defects and create a constitutionally valid lien.

5.08    In *Collier*, the court held that although parties may not contract around constitutional requirements nor waive the requirements, the Constitution may provide a mechanism for validating void liens by subsequently complying with the constitutional requirements. *Collier* is controlling Texas authority that provides a home equity loan can be both void and curable, i.e. made valid later:

> The courts have established a rule that which the constitution declares void cannot be made valid by agreement of the parties. . . If the law was not strictly complied with, by the execution of a valid contract. . . no lien could be fixed upon the premises to secure the payment therefor. . . If a valid lien was not created in the original instrument then the defect could not be ratified by [the homeowners], **unless the power authorizing them to make a valid lien thereon, at the time of the attempted ratification existed under the constitution and statutes of this State**. So long as the premises constitute the homestead of [borrowers], a lien cannot be placed thereon, **except as provided for by the constitution and statutes.**

*Collier,* 62 S.W.2d at 84-85 (emphasis added).

5.09   In 2001, the Texas Supreme Court cited *Collier*, explaining that the cure provisions in the 1997 home equity amendments fall within the *Collier* framework:

> [A] homestead lien that may not have complied with constitutional requirements at the outset can be made valid at a later date if the power to do so exists under our constitution or statutes. *Collier*, 62 S.W.2d at 84. The 1997 home- equity loan amendment affords lenders such authority. Specifically, through section 50(a)(6)(Q)(x)'s cure provision, the amendment provides a means for the lender to correct mistakes within a reasonable time in order to validate a lien securing a section 50(a)(6) extension of credit.

*Doody v. Ameriquest Mortg. Co*., 49 S. W.3d 342, 346 (Tex.2001).

5.10 *Doody* confirms that constitutionally defective liens, such as that in the present case, are void unless and until cured. Neither Deutsche Bank nor Homeward Residential have cured Martinez's defective lien. Therefore, the lien is void and not subject to a statute of limitations. *Ford*, 235 S.W.3d at 618; *See also Florey v. Estate of McConnell*, 212 S.W.3d 439, 444 (Tex. App.-Austin 2006).

5.11   In support of their motion for summary judgment, Deutsche Bank and Homeward Residential incorrectly rely on *Schanzle*[2], *Rivera*[3], and *Priester*[4], none of which are binding on this Court (CR 71).

---

[2] *Schanzle v. JPMC Specialty Mortg. LLC*, 2011 Tex. App. LEXIS 1748 (Tex. App. - Austin 2011)

[3] *Rivera v. Countrywide Home Loans, Inc*., 262 S.W.3d 834 (Tex. App. – Dallas 2008, no pet.)

[4] *Priester v. JPMorgan Chase Bank, N.A*., 708 F.3d 667 (5th Cir. 2013)

5.12 In *Rivera*, the Dallas Court of Appeals concluded that a limitations statute applied to claims arising out of a defective home equity lien. *Rivera*, 262 S.W.3d at 839. However, the parties in *Rivera* agreed that the four-year statute of limitations applied to the constitutional and fraudulent lien causes of action. *Id.* Accordingly, there was no dispute as to whether defective home equity liens are void or voidable. Since there was no dispute, no analysis was provided and *Rivera* offers no guidance whatsoever in the present case where a dispute does exist.

5.13 In *Schanzle*, the court did not decide the void/voidable question either. The homeowner, a *pro se* litigant, waived his constitutional home equity claim. *Schanzle*, 2011 Tex. App. LEXIS 1748 at *10 n.4. Nevertheless, the court, without analysis, relied on *Rivera* and concluded that the four-year statute of limitations applied to violations of constitutional requirements for home equity loans. *Id*. at *10.

5.14 In *Priester,* the Fifth Circuit court made an improper *Erie* guess on the applicability of a statute of limitations for Texas Constitution violations, an issue already resolved by the Texas Supreme Court. *See Priester*, 708 F.3d 667 at 673. Under the doctrine of *Erie R.R. v. Tompkins,* 304 U.S. 64 (U.S. 1938), in diversity cases such as *Priester*, state law as determined by state courts controls the legal determination of the case. *Ashland Chem. v. Barco Inc.,* 123 F.3d 261, 265 (5th Cir. Tex. 1997). Therefore, in *Priester,* the Fifth Circuit was bound by the

decisions of the Texas Supreme Court and the Texas Constitution. 28 U.S.C §1652[5]; *Royal Bank of Canada v. Trentham Corp*., 665 F.2d 515, 516 (5th Cir. 1981); *Erie R.R.,* 304 U.S. at 78.

5.16   However, the Fifth Circuit failed to properly apply the *Erie* doctrine. Although the Texas Supreme Court has established that it is necessary to determine whether a deed is void or voidable in order to confirm whether or not it is barred by limitation, the Fifth Circuit did not analyze Priester's lien to determine whether it was void or voidable. *Slaughter v. Qualls*, 162 S.W.2d 671, 674 (1942). Instead, the *Priester* opinion assumed that liens that fail to comply with Section 50(a)(6) are voidable. *Id*. at 674 n.4.

5.17   In reaching its decision, the Fifth Circuit relied on *Rivera* and *Schanzle* without noting that, in those cases, the applicability of a limitations statute had been undisputed or waived. *Id.* at 673. On the other hand, the court overlooks *Collier*, which is binding authority. Furthermore, in its reliance on *Doody*, the court conflates a "curable" lien with that of a "voidable" lien", which is incorrect.

5.18   The court fails to mention the long-settled rule under Tex. Const. art. 16

---

[5] § 1652. State laws as rules of decision
The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

sect. 50(c) that defective homestead liens are void. The Constitution defines the requirements of a valid lien on a homestead and provides that no homestead lien is ever valid unless it complies with the Constitution. "When interpreting our state constitution," the Supreme Court instructs, "we rely heavily on its literal text and must give effect to its plain language." *Doody*, 49 S.W.3d at 343-45. The Fifth Circuit has rewritten the Texas Constitution and eliminated Section 50(c) by focusing its analysis only on Section 50(a)(6) and providing absolutely no weight on Section 50(c). In doing so, the opinion crafts its analysis only in the context of voidable liens.

5.19 The present suit is distinguishable from *Priester*. In the present case, Martinez alleges that his home equity loan is **void**. This is quite different from the "voidable" language used in the *Priester* opinion.

### ii. The District Court erred in finding that Appellant's suit was untimely filed because statute of limitations did not begin to run until the date the mortgagee exercised its option to accelerate the loan.

5.20 Alternatively, should the court find that the lien in this suit is in fact voidable, then the six year statute of limitations applies pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 16.035. "Causes of action accrue and "statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011).

5.21 The Texas Supreme Court has made it clear that "….if a series of notes or obligations or a note or obligation payable in installments is secured by a lien on real property, limitations does not begin to run until the maturity date of the last note, obligation, or installment." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001). Alternatively, the limitations may run sooner if the mortgagee exercises its option to accelerate the loan. *Id*.; *See also Hammann v. J.J. McMullen & Co*., 62 S.W.2d 59, 61 (Tex. 1933).

5.22 In the present cause of action, the subject loan was accelerated on August 1, 2011, the date Homeward Residential served Martinez with a Notice of Acceleration (CR 151 - 153). On that date, the four-year statute of limitations to enforce the Deed of Trust began to run (TEX. CIV. PRAC. & REM. CODE ANN § 16.035) along with the six-year statute of limitations to challenge the enforcement of underlying Note (TEX. BUS. & COMM. CODE ANN § 3.118). Martinez filed the present suit on April 10, 2013, prior to the expiration of the six-year statute of limitations.

## CONCLUSION

5.23 There exists a genuine issue of material fact as to whether Martinez's lien is void or voidable. Should the lien be deemed as void the trial court erred in granting Appellees' motion for summary judgment because statute of limitations do not apply. Alternatively, should the court find that the lien in this suit is voidable,

Appellant's suit was filed timely because statute of limitations did not begin to run until the date the mortgagee exercised its option to accelerate the loan.

## PRAYER

For the foregoing reasons, Appellant Raul Martinez respectfully requests that the Court reverse the judgment of the District Court in all things for further action consistent with its opinion.

Respectfully submitted,

By: */s/ William B. Gammon*

KARLA HUERTAS, SBN: 24087765
WILLIAM B. GAMMON, SBN: 07611280
**GAMMON LAW OFFICE, PLLC.**
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Phone: 512-444-4529
Fax: 512-545-4279
Firm@GammonLawOffice.com
COUNSEL FOR APPELLANT

# CERTIFICATE OF SERVICE

I served by ProDoc e-service and facsimile on this 18th day of February, 2015 to the individuals listed below:

WILL G. BASSHAM, SBN: 24073894
JEREMY J. OVERBEY, SBN: 24046570
**SETTLEPOU**
3333 Lee Parkway, Eighth Floor
Dallas, Texas 75219
Phone: 214-520-3300
Fax: 214-526-4145
*Counsel for Deutsche Bank National Trust Company, as Trustee*
*for Ameriquest Mortgage Securities, Inc.; Asset-Backed Pass-Through*
*Certificates Series 2003-6; and Homeward Residential, Inc.*

_/s/ William B. Gammon_
William B. Gammon

# APPENDICES

**Appendix A: Judgment on Appeal**

**Appendix B: Tex. Const. Art. XVI Sect. 50(c)**

# APPENDIX A

# Judgment on Appeal

**ORDER GRANTING DEFENDANTS' TRADITIONAL AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR TRADITIONAL
AND NO EVIDENCE PARTIAL SUMMARY JUDGMENT**

Filed In The District Court
of Travis County, Texas

OCT 28 2014

At_____ p.M.
Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-13-001195

| | | |
|---|---|---|
| RAUL MARTINEZ, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DEUTSCHE BANK NATIONAL TRUST | § | |
| COMPANY AS TRUSTEE FOR | § | 201st JUDICIAL DISTRICT |
| AMERIQUEST MORTGAGE | § | |
| SECURITIES, INC., ASSET-BACKED | § | |
| PASS-THROUGH CERTIFICATES | § | |
| SERIES 2003-6; HOMEWARD | § | |
| RESIDENTIAL, INC. and | § | |
| JUANITA STRICKLAND | § | |
| | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

### ORDER GRANTING DEFENDANTS' TRADITIONAL AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR TRADITIONAL AND NO EVIDENCE PARTIAL SUMMARY JUDGMENT

On September 25, 2014, came on to be heard Defendants Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates Series 2003-6 and Homeward Residential, Inc.'s (collectively, "Defendants") Traditional and No-Evidence Motion for Summary Judgment, and Plaintiff Raul Martinez's Motion for Traditional and No Evidence Partial Summary Judgment, in the above-entitled and numbered cause.

The Court, having considered Defendants' Motion, Plaintiff's Motion and Defendants' Response thereto, the pleadings on file, and the arguments of the parties, is of the opinion that Defendants' Motion should be, and hereby is, in all respects GRANTED, and that Plaintiff's Motion should be, and hereby is, in all respects DENIED.

ORDER GRANTING DEFENDANTS' TRADITIONAL AND NO-EVIDENCE
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR TRADITIONAL AND NO EVIDENCE PARTIAL SUMMARY JUDGMENT        PAGE 1 OF 3

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that Defendants' Traditional and No-Evidence Motion for Summary Judgment is in all respects GRANTED.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Traditional and No Evidence Partial Summary Judgment is in all respects DENIED.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiff Raul Martinez take nothing against Defendants.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that all costs of court be taxed against the party incurring the same.

All other relief requested and not expressly granted herein is hereby denied. This Order is a final summary judgment finally disposing of all parties and all claims and is appealable.

Signed: _October 28_, 2014.

_____
Honorable Judge Presiding

ORDER GRANTING DEFENDANTS' TRADITIONAL AND NO-EVIDENCE
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR TRADITIONAL AND NO EVIDENCE PARTIAL SUMMARY JUDGMENT        PAGE 2 OF 3

APPROVED AS TO FORM AND SUBSTANCE:

294

*/s/ Will G. Bassham*
Jeremy J. Overbey
Texas Bar I.D. 24046570
*joverbey@settlepou.com*
Will G. Bassham
Texas Bar I.D. 24073894
*wbassham@settlepou.com*

SETTLEPOU
3333 Lee Parkway, Eighth Floor
Dallas, Texas 75219
(214) 520-3300
(214) 526-4145 (Facsimile)
ATTORNEYS FOR DEFENDANTS


APPROVED AS TO FORM:

*/s/ Jason Billick*
Bill Gammon
Texas Bar I.D. 07611280
E. Jason Billick
Texas Bar I.D. 24078230
GAMMON LAW OFFICE, PLLC
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
(512) 472-8909
(888) 545-4279 (fax)
ATTORNEYS FOR PLAINTIFF


DMS-#670628-v1-Order_Granting_MSJ


ORDER GRANTING DEFENDANTS' TRADITIONAL AND NO-EVIDENCE
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR TRADITIONAL AND NO EVIDENCE PARTIAL SUMMARY JUDGMENT          PAGE 3 OF 3

# APPENDIX B

# CONSTITUTION OF THE STATE OF TEXAS

## CONSTITUTION OF THE STATE OF TEXAS 1876
## ARTICLE XVI. GENERAL PROVISIONS
### Tex. Const. Art. XVI, § 50 (2014)



LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

\*\*\* This document is current through the 2013 3rd Called Session \*\*\*

CONSTITUTION OF THE STATE OF TEXAS 1876
ARTICLE XVI.  GENERAL PROVISIONS

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Const. Art. XVI, § 50*  (2014)

§ 50.  Homestead; Protection from Forced Sale; Mortgages, Trust Deeds, and Liens

   (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:

   (1) the purchase money thereof, or a part of such purchase money;

   (2) the taxes due thereon;

   (3) an owelty of partition imposed against the entirety of the property by a court order or by a written agreement of the parties to the partition, including a debt of one spouse in favor of the other spouse resulting from a division or an award of a family homestead in a divorce proceeding;

   (4) the refinance of a lien against a homestead, including a federal tax lien resulting from the tax debt of both spouses, if the homestead is a family homestead, or from the tax debt of the owner;

   (5) work and material used in constructing new improvements thereon, if contracted for in writing, or work and material used to repair or renovate existing improvements thereon if:

   (A) the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead;

   (B) the contract for the work and material is not executed by the owner or the owner's spouse before the fifth day after the owner makes written application for any extension of credit for the work and material, unless the work and material are necessary to complete immediate repairs to conditions on the homestead property that materially affect the health or safety of the owner or person residing in the homestead and the owner of the homestead acknowledges such in writing;

   (C) the contract for the work and material expressly provides that the owner may rescind the contract without penalty or charge within three days after the execution of the contract by all parties, unless the work and material are necessary to complete immediate repairs to conditions on the homestead property that materially affect the health or safety of the owner or person residing in the homestead and the owner of the homestead acknowledges such in writing; and

(D) the contract for the work and material is executed by the owner and the owner's spouse only at the office of a third-party lender making an extension of credit for the work and material, an attorney at law, or a title company;

(6) an extension of credit that:

(A) is secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse;

(B) is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made;

(C) is without recourse for personal liability against each owner and the spouse of each owner, unless the owner or spouse obtained the extension of credit by actual fraud;

(D) is secured by a lien that may be foreclosed upon only by a court order;

(E) does not require the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit;

(F) is not a form of open-end account that may be debited from time to time or under which credit may be extended from time to time unless the open-end account is a home equity line of credit;

(G) is payable in advance without penalty or other charge;

(H) is not secured by any additional real or personal property other than the homestead;

(I) is not secured by homestead property that on the date of closing is designated for agricultural use as provided by statutes governing property tax, unless such homestead property is used primarily for the production of milk;

(J) may not be accelerated because of a decrease in the market value of the homestead or because of the owner's default under other indebtedness not secured by a prior valid encumbrance against the homestead;

(K) is the only debt secured by the homestead at the time the extension of credit is made unless the other debt was made for a purpose described by Subsections (a)(1)--(a)(5) or Subsection (a)(8) of this section;

(L) is scheduled to be repaid:

(i) in substantially equal successive periodic installments, not more often than every 14 days and not less often than monthly, beginning no later than two months from the date the extension of credit is made, each of which equals or exceeds the amount of accrued interest as of the date of the scheduled installment; or

(ii) if the extension of credit is a home equity line of credit, in periodic payments described under Subsection (t)(8) of this section;

(M) is closed not before:

(i) the 12th day after the later of the date that the owner of the homestead submits a loan application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by Subsection (g) of this section;

(ii) one business day after the date that the owner of the homestead receives a copy of the loan application if not previously provided and a final itemized disclosure of the actual fees, points, interest,

costs, and charges that will be charged at closing. If a bona fide emergency or another good cause exists and the lender obtains the written consent of the owner, the lender may provide the documentation to the owner or the lender may modify previously provided documentation on the date of closing; and

(iii) the first anniversary of the closing date of any other extension of credit described by Subsection (a)(6) of this section secured by the same homestead property, except a refinance described by Paragraph (Q)(x)(f) of this subdivision, unless the owner on oath requests an earlier closing due to a state of emergency that:

(a) has been declared by the president of the United States or the governor as provided by law; and

(b) applies to the area where the homestead is located;

(N) is closed only at the office of the lender, an attorney at law, or a title company;

(O) permits a lender to contract for and receive any fixed or variable rate of interest authorized under statute;

(P) is made by one of the following that has not been found by a federal regulatory agency to have engaged in the practice of refusing to make loans because the applicants for the loans reside or the property proposed to secure the loans is located in a certain area:

(i) a bank, savings and loan association, savings bank, or credit union doing business under the laws of this state or the United States;

(ii) a federally chartered lending instrumentality or a person approved as a mortgagee by the United States government to make federally insured loans;

(iii) a person licensed to make regulated loans, as provided by statute of this state;

(iv) a person who sold the homestead property to the current owner and who provided all or part of the financing for the purchase;

(v) a person who is related to the homestead property owner within the second degree of affinity or consanguinity; or

(vi) a person regulated by this state as a mortgage broker; and

(Q) is made on the condition that:

(i) the owner of the homestead is not required to apply the proceeds of the extension of credit to repay another debt except debt secured by the homestead or debt to another lender;

(ii) the owner of the homestead not assign wages as security for the extension of credit;

(iii) the owner of the homestead not sign any instrument in which blanks relating to substantive terms of agreement are left to be filled in;

(iv) the owner of the homestead not sign a confession of judgment or power of attorney to the lender or to a third person to confess judgment or to appear for the owner in a judicial proceeding;

(v) at the time the extension of credit is made, the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit;

(vi) the security instruments securing the extension of credit contain a disclosure that the extension of credit is the type of credit defined by *Section 50(a)(6), Article XVI, Texas Constitution*;

(vii) within a reasonable time after termination and full payment of the extension of credit, the lender cancel and return the promissory note to the owner of the homestead and give the owner, in

recordable form, a release of the lien securing the extension of credit or a copy of an endorsement and assignment of the lien to a lender that is refinancing the extension of credit;

(viii) the owner of the homestead and any spouse of the owner may, within three days after the extension of credit is made, rescind the extension of credit without penalty or charge;

(ix) the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made;

(x) except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by:

(a) paying to the owner an amount equal to any overcharge paid by the owner under or related to the extension of credit if the owner has paid an amount that exceeds an amount stated in the applicable Paragraph (E), (G), or (O) of this subdivision;

(b) sending the owner a written acknowledgement that the lien is valid only in the amount that the extension of credit does not exceed the percentage described by Paragraph (B) of this subdivision, if applicable, or is not secured by property described under Paragraph (H) or (I) of this subdivision, if applicable;

(c) sending the owner a written notice modifying any other amount, percentage, term, or other provision prohibited by this section to a permitted amount, percentage, term, or other provision and adjusting the account of the borrower to ensure that the borrower is not required to pay more than an amount permitted by this section and is not subject to any other term or provision prohibited by this section;

(d) delivering the required documents to the borrower if the lender fails to comply with Subparagraph (v) of this paragraph or obtaining the appropriate signatures if the lender fails to comply with Subparagraph (ix) of this paragraph;

(e) sending the owner a written acknowledgement, if the failure to comply is prohibited by Paragraph (K) of this subdivision, that the accrual of interest and all of the owner's obligations under the extension of credit are abated while any prior lien prohibited under Paragraph (K) remains secured by the homestead; or

(f) if the failure to comply cannot be cured under Subparagraphs (x)(a)--(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $ 1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan at no cost to the owner on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with this section or on terms on which the owner and the lender or holder otherwise agree that comply with this section; and

(xi) the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the extension of credit is made by a person other than a person described under Paragraph (P) of this subdivision or if the lien was not created under a written agreement with the consent of each owner and each owner's spouse, unless each owner and each owner's spouse who did not initially consent subsequently consents;

(7) a reverse mortgage; or

(8) the conversion and refinance of a personal property lien secured by a manufactured home to a lien on real property, including the refinance of the purchase price of the manufactured home, the cost of

installing the manufactured home on the real property, and the refinance of the purchase price of the real property.

(b) An owner or claimant of the property claimed as homestead may not sell or abandon the homestead without the consent of each owner and the spouse of each owner, given in such manner as may be prescribed by law.

(c) No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section, whether such mortgage, trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void.

(d) A purchaser or lender for value without actual knowledge may conclusively rely on an affidavit that designates other property as the homestead of the affiant and that states that the property to be conveyed or encumbered is not the homestead of the affiant.

(e) A refinance of debt secured by a homestead and described by any subsection under Subsections (a)(1)--(a)(5) that includes the advance of additional funds may not be secured by a valid lien against the homestead unless:

(1) the refinance of the debt is an extension of credit described by Subsection (a)(6) of this section; or

(2) the advance of all the additional funds is for reasonable costs necessary to refinance such debt or for a purpose described by Subsection (a)(2), (a)(3), or (a)(5) of this section.

(f) A refinance of debt secured by the homestead, any portion of which is an extension of credit described by Subsection (a)(6) of this section, may not be secured by a valid lien against the homestead unless the refinance of the debt is an extension of credit described by Subsection (a)(6) or (a)(7) of this section.

(g) An extension of credit described by Subsection (a)(6) of this section may be secured by a valid lien against homestead property if the extension of credit is not closed before the 12th day after the lender provides the owner with the following written notice on a separate instrument:

"NOTICE CONCERNING EXTENSIONS OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE
XVI, TEXAS CONSTITUTION:

"*SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION* ALLOWS CERTAIN LOANS TO BE SECURED AGAINST THE EQUITY IN YOUR HOME. SUCH LOANS ARE COMMONLY
KNOWN AS EQUITY LOANS. IF YOU DO NOT REPAY THE LOAN OR IF YOU FAIL TO MEET THE
TERMS OF THE LOAN, THE LENDER MAY FORECLOSE AND SELL YOUR HOME. THE CONSTITUTION PROVIDES THAT:

"(A) THE LOAN MUST BE VOLUNTARILY CREATED WITH THE CONSENT OF EACH OWNER
OF YOUR HOME AND EACH OWNER'S SPOUSE;

"(B) THE PRINCIPAL LOAN AMOUNT AT THE TIME THE LOAN IS MADE MUST NOT
EXCEED AN AMOUNT THAT, WHEN ADDED TO THE PRINCIPAL BALANCES OF ALL OTHER
LIENS AGAINST YOUR HOME, IS MORE THAN 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME;

"(C) THE LOAN MUST BE WITHOUT RECOURSE FOR PERSONAL LIABILITY AGAINST

YOU AND YOUR SPOUSE UNLESS YOU OR YOUR SPOUSE OBTAINED THIS EXTENSION OF

CREDIT BY ACTUAL FRAUD;

"(D) THE LIEN SECURING THE LOAN MAY BE FORECLOSED UPON ONLY WITH A COURT

ORDER;

"(E) FEES AND CHARGES TO MAKE THE LOAN MAY NOT EXCEED 3 PERCENT OF THE LOAN AMOUNT;

"(F) THE LOAN MAY NOT BE AN OPEN-END ACCOUNT THAT MAY BE DEBITED FROM TIME TO TIME OR UNDER WHICH CREDIT MAY BE EXTENDED FROM TIME TO TIME UNLESS

IT IS A HOME EQUITY LINE OF CREDIT;

"(G) YOU MAY PREPAY THE LOAN WITHOUT PENALTY OR CHARGE;

"(H) NO ADDITIONAL COLLATERAL MAY BE SECURITY FOR THE LOAN;

"(I) THE LOAN MAY NOT BE SECURED BY HOMESTEAD PROPERTY THAT IS DESIGNATED FOR AGRICULTURAL USE AS OF THE DATE OF CLOSING, UNLESS THE AGRICULTURAL HOMESTEAD PROPERTY IS USED PRIMARILY FOR THE PRODUCTION OF

MILK;

"(J) YOU ARE NOT REQUIRED TO REPAY THE LOAN EARLIER THAN AGREED SOLELY BECAUSE THE FAIR MARKET VALUE OF YOUR HOME DECREASES OR BECAUSE YOU DEFAULT

ON ANOTHER LOAN THAT IS NOT SECURED BY YOUR HOME;

"(K) ONLY ONE LOAN DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MAY BE SECURED WITH YOUR HOME AT ANY GIVEN TIME;

"(L) THE LOAN MUST BE SCHEDULED TO BE REPAID IN PAYMENTS THAT EQUAL OR EXCEED THE AMOUNT OF ACCRUED INTEREST FOR EACH PAYMENT PERIOD;

"(M) THE LOAN MAY NOT CLOSE BEFORE 12 DAYS AFTER YOU SUBMIT A LOAN APPLICATION TO THE LENDER OR BEFORE 12 DAYS AFTER YOU RECEIVE THIS NOTICE, WHICHEVER DATE IS LATER; AND MAY NOT WITHOUT YOUR CONSENT CLOSE BEFORE ONE

BUSINESS DAY AFTER THE DATE ON WHICH YOU RECEIVE A COPY OF YOUR LOAN APPLICATION IF NOT PREVIOUSLY PROVIDED AND A FINAL ITEMIZED DISCLOSURE OF THE ACTUAL FEES, POINTS, INTEREST, COSTS, AND CHARGES THAT WILL BE CHARGED AT CLOSING; AND IF YOUR HOME WAS SECURITY FOR THE SAME TYPE OF LOAN WITHIN

THE PAST YEAR, A NEW LOAN SECURED BY THE SAME PROPERTY MAY NOT CLOSE BEFORE

ONE YEAR HAS PASSED FROM THE CLOSING DATE OF THE OTHER LOAN, UNLESS ON OATH

YOU REQUEST AN EARLIER CLOSING DUE TO A DECLARED STATE OF EMERGENCY;

"(N) THE LOAN MAY CLOSE ONLY AT THE OFFICE OF THE LENDER, TITLE COMPANY, OR AN ATTORNEY AT LAW;

"(O) THE LENDER MAY CHARGE ANY FIXED OR VARIABLE RATE OF INTEREST AUTHORIZED BY STATUTE;

"(P) ONLY A LAWFULLY AUTHORIZED LENDER MAY MAKE LOANS DESCRIBED BY *SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION*;

"(Q) LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MUST:

"(1) NOT REQUIRE YOU TO APPLY THE PROCEEDS TO ANOTHER DEBT EXCEPT A DEBT THAT IS SECURED BY YOUR HOME OR OWED TO ANOTHER LENDER;

"(2) NOT REQUIRE THAT YOU ASSIGN WAGES AS SECURITY;

"(3) NOT REQUIRE THAT YOU EXECUTE INSTRUMENTS WHICH HAVE BLANKS FOR SUBSTANTIVE TERMS OF AGREEMENT LEFT TO BE FILLED IN;

"(4) NOT REQUIRE THAT YOU SIGN A CONFESSION OF JUDGMENT OR POWER OF ATTORNEY TO ANOTHER PERSON TO CONFESS JUDGMENT OR APPEAR IN A LEGAL PROCEEDING ON YOUR BEHALF;

"(5) PROVIDE THAT YOU RECEIVE A COPY OF YOUR FINAL LOAN APPLICATION AND ALL EXECUTED DOCUMENTS YOU SIGN AT CLOSING;

"(6) PROVIDE THAT THE SECURITY INSTRUMENTS CONTAIN A DISCLOSURE THAT THIS LOAN IS A LOAN DEFINED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;

"(7) PROVIDE THAT WHEN THE LOAN IS PAID IN FULL, THE LENDER WILL SIGN AND GIVE YOU A RELEASE OF LIEN OR AN ASSIGNMENT OF THE LIEN, WHICHEVER IS APPROPRIATE;

"(8) PROVIDE THAT YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THE LOAN WITHOUT PENALTY OR CHARGE;

"(9) PROVIDE THAT YOU AND THE LENDER ACKNOWLEDGE THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LOAN CLOSES; AND

"(10) PROVIDE THAT THE LENDER WILL FORFEIT ALL PRINCIPAL AND INTEREST IF THE LENDER FAILS TO COMPLY WITH THE LENDER'S OBLIGATIONS UNLESS THE LENDER CURES THE FAILURE TO COMPLY AS PROVIDED BY SECTION 50(a)(6)(Q)(x), ARTICLE XVI, OF THE TEXAS CONSTITUTION; AND

"(R) IF THE LOAN IS A HOME EQUITY LINE OF CREDIT:

"(1) YOU MAY REQUEST ADVANCES, REPAY MONEY, AND REBORROW MONEY UNDER THE LINE OF CREDIT;

"(2) EACH ADVANCE UNDER THE LINE OF CREDIT MUST BE IN AN AMOUNT OF AT LEAST $ 4,000;

"(3) YOU MAY NOT USE A CREDIT CARD, DEBIT CARD, OR SIMILAR DEVICE, OR PREPRINTED CHECK THAT YOU DID NOT SOLICIT, TO OBTAIN ADVANCES UNDER THE LINE OF CREDIT;

"(4) ANY FEES THE LENDER CHARGES MAY BE CHARGED AND COLLECTED ONLY AT THE TIME THE LINE OF CREDIT IS ESTABLISHED AND THE LENDER MAY NOT CHARGE A FEE IN CONNECTION WITH ANY ADVANCE;

"(5) THE MAXIMUM PRINCIPAL AMOUNT THAT MAY BE EXTENDED, WHEN ADDED TO ALL OTHER DEBTS SECURED BY YOUR HOME, MAY NOT EXCEED 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LINE OF CREDIT IS ESTABLISHED;

"(6) IF THE PRINCIPAL BALANCE UNDER THE LINE OF CREDIT AT ANY TIME EXCEEDS 50 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME, AS DETERMINED ON THE DATE THE LINE OF CREDIT IS ESTABLISHED, YOU MAY NOT CONTINUE TO REQUEST ADVANCES UNDER THE LINE OF CREDIT UNTIL THE BALANCE IS LESS THAN 50 PERCENT OF THE FAIR MARKET VALUE; AND

"(7) THE LENDER MAY NOT UNILATERALLY AMEND THE TERMS OF THE LINE OF CREDIT.

"THIS NOTICE IS ONLY A SUMMARY OF YOUR RIGHTS UNDER THE TEXAS CONSTITUTION.

YOUR RIGHTS ARE GOVERNED BY SECTION 50, ARTICLE XVI, OF THE TEXAS CONSTITUTION, AND NOT BY THIS NOTICE."

If the discussions with the borrower are conducted primarily in a language other than English, the lender shall, before closing, provide an additional copy of the notice translated into the written language in which the discussions were conducted.

(h) A lender or assignee for value may conclusively rely on the written acknowledgment as to the fair market value of the homestead property made in accordance with Subsection (a)(6)(Q)(ix) of this section if:

(1) the value acknowledged to is the value estimate in an appraisal or evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Subsection (a)(6); and

(2) the lender or assignee does not have actual knowledge at the time of the payment of value or advance of funds by the lender or assignee that the fair market value stated in the written acknowledgment was incorrect.

(i) This subsection shall not affect or impair any right of the borrower to recover damages from the lender or assignee under applicable law for wrongful foreclosure. A purchaser for value without actual knowledge may conclusively presume that a lien securing an extension of credit described by Subsection (a)(6) of this section was a valid lien securing the extension of credit with homestead property if:

(1) the security instruments securing the extension of credit contain a disclosure that the extension of credit secured by the lien was the type of credit defined by *Section 50(a)(6), Article XVI, Texas Constitution*;

(2) the purchaser acquires the title to the property pursuant to or after the foreclosure of the voluntary lien; and

(3) the purchaser is not the lender or assignee under the extension of credit.

(j) Subsection (a)(6) and Subsections (e)--(i) of this section are not severable, and none of those provisions would have been enacted without the others. If any of those provisions are held to be preempted by the laws of the United States, all of those provisions are invalid. This subsection shall not apply to any lien or extension of credit made after January 1, 1998, and before the date any provision under Subsection (a)(6) or Subsections (e)--(i) is held to be preempted.

(k) "Reverse mortgage" means an extension of credit:

(1) that is secured by a voluntary lien on homestead property created by a written agreement with the consent of each owner and each owner's spouse;

(2) that is made to a person who is or whose spouse is 62 years or older;

(3) that is made without recourse for personal liability against each owner and the spouse of each owner;

(4) under which advances are provided to a borrower:

(A) based on the equity in a borrower's homestead; or

(B) for the purchase of homestead property that the borrower will occupy as a principal residence;

(5) that does not permit the lender to reduce the amount or number of advances because of an adjustment in the interest rate if periodic advances are to be made;

(6) that requires no payment of principal or interest until:

(A) all borrowers have died;

(B) the homestead property securing the loan is sold or otherwise transferred;

(C) all borrowers cease occupying the homestead property for a period of longer than 12 consecutive months without prior written approval from the lender;

(C-1) if the extension of credit is used for the purchase of homestead property, the borrower fails to timely occupy the homestead property as the borrower's principal residence within a specified period after the date the extension of credit is made that is stipulated in the written agreement creating the lien on the property; or

(D) the borrower:

(i) defaults on an obligation specified in the loan documents to repair and maintain, pay taxes and assessments on, or insure the homestead property;

(ii) commits actual fraud in connection with the loan; or

(iii) fails to maintain the priority of the lender's lien on the homestead property, after the lender gives notice to the borrower, by promptly discharging any lien that has priority or may obtain priority over the lender's lien within 10 days after the date the borrower receives the notice, unless the borrower:

(a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to the lender;

(b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings so as to prevent the enforcement of the lien or forfeiture of any part of the homestead property; or

(c) secures from the holder of the lien an agreement satisfactory to the lender subordinating the lien to all amounts secured by the lender's lien on the homestead property;

(7) that provides that if the lender fails to make loan advances as required in the loan documents and if the lender fails to cure the default as required in the loan documents after notice from the borrower, the lender forfeits all principal and interest of the reverse mortgage, provided, however, that this subdivision does not apply when a governmental agency or instrumentality takes an assignment of the loan in order to cure the default;

(8) that is not made unless the prospective borrower and the spouse of the prospective borrower attest in writing that the prospective borrower and the prospective borrower's spouse received counseling regarding the advisability and availability of reverse mortgages and other financial alternatives that was completed not earlier than the 180th day nor later than the 5th day before the date the extension of credit is closed;

(9) that is not closed before the 12th day after the date the lender provides to the prospective borrower the following written notice on a separate instrument, which the lender or originator and the borrower must sign for the notice to take effect:


"IMPORTANT NOTICE TO BORROWERS RELATED TO YOUR REVERSE MORTGAGE

  "UNDER THE TEXAS TAX CODE, CERTAIN ELDERLY PERSONS MAY DEFER THE COLLECTION OF PROPERTY TAXES ON THEIR RESIDENCE HOMESTEAD.  BY RECEIVING THIS REVERSE MORTGAGE YOU MAY BE REQUIRED TO FORGO ANY PREVIOUSLY

APPROVED DEFERRAL OF PROPERTY TAX COLLECTION AND YOU MAY BE REQUIRED TO PAY PROPERTY TAXES ON AN ANNUAL BASIS ON THIS PROPERTY.

"THE LENDER MAY FORECLOSE THE REVERSE MORTGAGE AND YOU MAY LOSE YOUR HOME IF:

"(A) YOU DO NOT PAY THE TAXES OR OTHER ASSESSMENTS ON THE HOME EVEN IF YOU ARE ELIGIBLE TO DEFER PAYMENT OF PROPERTY TAXES;

"(B) YOU DO NOT MAINTAIN AND PAY FOR PROPERTY INSURANCE ON THE HOME AS REQUIRED BY THE LOAN DOCUMENTS;

"(C) YOU FAIL TO MAINTAIN THE HOME IN A STATE OF GOOD CONDITION AND REPAIR;

"(D) YOU CEASE OCCUPYING THE HOME FOR A PERIOD LONGER THAN 12 CONSECUTIVE MONTHS WITHOUT THE PRIOR WRITTEN APPROVAL FROM THE LENDER OR, IF THE EXTENSION OF CREDIT IS USED FOR THE PURCHASE OF THE HOME, YOU FAIL TO TIMELY OCCUPY THE HOME AS YOUR PRINCIPAL RESIDENCE WITHIN A PERIOD OF TIME AFTER THE EXTENSION OF CREDIT IS MADE THAT IS STIPULATED IN THE WRITTEN AGREEMENT CREATING THE LIEN ON THE HOME;

"(E) YOU SELL THE HOME OR OTHERWISE TRANSFER THE HOME WITHOUT PAYING OFF THE LOAN;

"(F) ALL BORROWERS HAVE DIED AND THE LOAN IS NOT REPAID;

"(G) YOU COMMIT ACTUAL FRAUD IN CONNECTION WITH THE LOAN; OR

"(H) YOU FAIL TO MAINTAIN THE PRIORITY OF THE LENDER'S LIEN ON THE HOME, AFTER THE LENDER GIVES NOTICE TO YOU, BY PROMPTLY DISCHARGING ANY LIEN THAT HAS PRIORITY OR MAY OBTAIN PRIORITY OVER THE LENDER'S LIEN WITHIN 10 DAYS AFTER THE DATE YOU RECEIVE THE NOTICE, UNLESS YOU:

"(1) AGREE IN WRITING TO THE PAYMENT OF THE OBLIGATION SECURED BY THE LIEN IN A MANNER ACCEPTABLE TO THE LENDER;

"(2) CONTEST IN GOOD FAITH THE LIEN BY, OR DEFEND AGAINST ENFORCEMENT OF THE LIEN IN, LEGAL PROCEEDINGS SO AS TO PREVENT THE ENFORCEMENT OF THE LIEN OR FORFEITURE OF ANY PART OF THE HOME; OR

"(3) SECURE FROM THE HOLDER OF THE LIEN AN AGREEMENT SATISFACTORY TO THE LENDER SUBORDINATING THE LIEN TO ALL AMOUNTS SECURED BY THE LENDER'S LIEN ON THE HOME.

"IF A GROUND FOR FORECLOSURE EXISTS, THE LENDER MAY NOT COMMENCE FORECLOSURE UNTIL THE LENDER GIVES YOU WRITTEN NOTICE BY MAIL THAT A GROUND FOR FORECLOSURE EXISTS AND GIVES YOU AN OPPORTUNITY TO REMEDY THE CONDITION CREATING THE GROUND FOR FORECLOSURE OR TO PAY THE REVERSE MORTGAGE DEBT WITHIN THE TIME PERMITTED BY *SECTION 50(k)(10), ARTICLE XVI, OF THE TEXAS CONSTITUTION.* THE LENDER MUST OBTAIN A COURT ORDER FOR FORECLOSURE EXCEPT THAT A COURT ORDER IS NOT REQUIRED IF THE FORECLOSURE OCCURS BECAUSE:

"(1) ALL BORROWERS HAVE DIED; OR

"(2) THE HOMESTEAD PROPERTY SECURING THE LOAN IS SOLD OR OTHERWISE TRANSFERRED."

"YOU SHOULD CONSULT WITH YOUR HOME COUNSELOR OR AN ATTORNEY IF YOU HAVE ANY CONCERNS ABOUT THESE OBLIGATIONS BEFORE YOU CLOSE YOUR REVERSE MORTGAGE LOAN.  TO LOCATE AN ATTORNEY IN YOUR AREA, YOU MAY WISH TO CONTACT THE STATE BAR OF TEXAS."

"THIS NOTICE IS ONLY A SUMMARY OF YOUR RIGHTS UNDER THE TEXAS CONSTITUTION. YOUR RIGHTS ARE GOVERNED IN PART BY *SECTION 50, ARTICLE XVI, OF THE TEXAS CONSTITUTION*, AND NOT BY THIS NOTICE."

(10) that does not permit the lender to commence foreclosure until the lender gives notice to the borrower, in the manner provided for a notice by mail related to the foreclosure of liens under Subsection (a)(6) of this section, that a ground for foreclosure exists and gives the borrower at least 30 days, or at least 20 days in the event of a default under Subdivision (6)(D)(iii) of this subsection, to:

    (A) remedy the condition creating the ground for foreclosure;

    (B) pay the debt secured by the homestead property from proceeds of the sale of the homestead property by the borrower or from any other sources; or

    (C) convey the homestead property to the lender by a deed in lieu of foreclosure; and

(11) that is secured by a lien that may be foreclosed upon only by a court order, if the foreclosure is for a ground other than a ground stated by Subdivision (6)(A) or (B) of this subsection.

(*l*) Advances made under a reverse mortgage and interest on those advances have priority over a lien filed for record in the real property records in the county where the homestead property is located after the reverse mortgage is filed for record in the real property records of that county.

(m) A reverse mortgage may provide for an interest rate that is fixed or adjustable and may also provide for interest that is contingent on appreciation in the fair market value of the homestead property. Although payment of principal or interest shall not be required under a reverse mortgage until the entire loan becomes due and payable, interest may accrue and be compounded during the term of the loan as provided by the reverse mortgage loan agreement.

(n) A reverse mortgage that is secured by a valid lien against homestead property may be made or acquired without regard to the following provisions of any other law of this state:

(1) a limitation on the purpose and use of future advances or other mortgage proceeds;

(2) a limitation on future advances to a term of years or a limitation on the term of open-end account advances;

(3) a limitation on the term during which future advances take priority over intervening advances;

(4) a requirement that a maximum loan amount be stated in the reverse mortgage loan documents;

(5) a prohibition on balloon payments;

(6) a prohibition on compound interest and interest on interest;

(7) a prohibition on contracting for, charging, or receiving any rate of interest authorized by any law of this state authorizing a lender to contract for a rate of interest; and

(8) a requirement that a percentage of the reverse mortgage proceeds be advanced before the assignment of the reverse mortgage.

(*o*) For the purposes of determining eligibility under any statute relating to payments, allowances, benefits, or services provided on a means-tested basis by this state, including supplemental security income, low-income energy assistance, property tax relief, medical assistance, and general assistance:

(1) reverse mortgage loan advances made to a borrower are considered proceeds from a loan and not income; and

(2) undisbursed funds under a reverse mortgage loan are considered equity in a borrower's home and not proceeds from a loan.

(p) The advances made on a reverse mortgage loan under which more than one advance is made must be made according to the terms established by the loan documents by one or more of the following methods:

(1) an initial advance at any time and future advances at regular intervals;

(2) an initial advance at any time and future advances at regular intervals in which the amounts advanced may be reduced, for one or more advances, at the request of the borrower;

(3) an initial advance at any time and future advances at times and in amounts requested by the borrower until the credit limit established by the loan documents is reached;

(4) an initial advance at any time, future advances at times and in amounts requested by the borrower until the credit limit established by the loan documents is reached, and subsequent advances at times and in amounts requested by the borrower according to the terms established by the loan documents to the extent that the outstanding balance is repaid; or

(5) at any time by the lender, on behalf of the borrower, if the borrower fails to timely pay any of the following that the borrower is obligated to pay under the loan documents to the extent necessary to protect the lender's interest in or the value of the homestead property:

(A) taxes;

(B) insurance;

(C) costs of repairs or maintenance performed by a person or company that is not an employee of the lender or a person or company that directly or indirectly controls, is controlled by, or is under common control with the lender;

(D) assessments levied against the homestead property; and

(E) any lien that has, or may obtain, priority over the lender's lien as it is established in the loan documents.

(q) To the extent that any statutes of this state, including without limitation, *Section 41.001 of the Texas Property Code*, purport to limit encumbrances that may properly be fixed on homestead property in a manner that does not permit encumbrances for extensions of credit described in Subsection (a)(6) or (a)(7) of this section, the same shall be superseded to the extent that such encumbrances shall be permitted to be fixed upon homestead property in the manner provided for by this amendment.

(r) The supreme court shall promulgate rules of civil procedure for expedited foreclosure proceedings related to the foreclosure of liens under Subsection (a)(6) of this section and to foreclosure of a reverse mortgage lien that requires a court order.

(s) The Finance Commission of Texas shall appoint a director to conduct research on the availability, quality, and prices of financial services and research the practices of business entities in the state that provide financial services under this section. The director shall collect information and produce reports on lending activity of those making loans under this section. The director shall report his or her findings to the legislature not later than December 1 of each year.

(t) A home equity line of credit is a form of an open-end account that may be debited from time to time, under which credit may be extended from time to time and under which:

(1) the owner requests advances, repays money, and reborrows money;

(2) any single debit or advance is not less than $ 4,000;

(3) the owner does not use a credit card, debit card, or similar device, or preprinted check unsolicited by the borrower, to obtain an advance;

(4) any fees described by Subsection (a)(6)(E) of this section are charged and collected only at the time the extension of credit is established and no fee is charged or collected in connection with any debit or advance;

(5) the maximum principal amount that may be extended under the account, when added to the aggregate total of the outstanding principal balances of all indebtedness secured by the homestead on the date the extension of credit is established, does not exceed an amount described under Subsection (a)(6)(B) of this section;

(6) no additional debits or advances are made if the total principal amount outstanding exceeds an amount equal to 50 percent of the fair market value of the homestead as determined on the date the account is established;

(7) the lender or holder may not unilaterally amend the extension of credit; and

(8) repayment is to be made in regular periodic installments, not more often than every 14 days and not less often than monthly, beginning not later than two months from the date the extension of credit is established, and:

(A) during the period during which the owner may request advances, each installment equals or exceeds the amount of accrued interest; and

(B) after the period during which the owner may request advances, installments are substantially equal.

(u) The legislature may by statute delegate one or more state agencies the power to interpret Subsections (a)(5)--(a)(7), (e)--(p), and (t), of this section. An act or omission does not violate a provision included in those subsections if the act or omission conforms to an interpretation of the provision that is:

(1) in effect at the time of the act or omission; and

(2) made by a state agency to which the power of interpretation is delegated as provided by this subsection or by an appellate court of this state or the United States.

(v) A reverse mortgage must provide that:

(1) the owner does not use a credit card, debit card, preprinted solicitation check, or similar device to obtain an advance;

(2) after the time the extension of credit is established, no transaction fee is charged or collected solely in connection with any debit or advance; and

(3) the lender or holder may not unilaterally amend the extension of credit.

**HISTORY:** Amendment proposed by Acts 1995, 74th Leg., S.J.R. No. 46, approved by electorate (Prop. 4) at the November 7, 1995 election; amendment proposed by Acts 1997, 75th Leg., H.J.R. No. 31, approved by electorate at the November 4, 1997 election; amendment proposed by Acts 1999, 76th Leg., S.J.R. No. 12, approved by electorate (Prop. 2) at the November 2, 1999 constitutional amendment election; amendment proposed by Acts 2001, 77th Leg., H.J.R. No. 75, approved by electorate at the November 6, 2001 general election; amendment proposed by Acts 2003, 78th Leg., H.J.R. No. 23 and S.J.R. No. 42, approved by electorate at the September 13, 2003 election; amendment proposed by Acts 2005, 79th Leg., S.J.R. No. 7, approved by the electorate (Prop. 7) at the November 8, 2005 election; amendment proposed by Acts 2007, 80th Leg., H.J.R. No. 72, approved by the electorate (Prop. 8) at the November 6, 2007 election; amendment proposed by Acts 2013, 83rd Leg., S.J.R. No. 18; approved by the electorate (Prop. 5) at the November 5, 2013 election.

ACCEPTED
03-14-00721-CV
4421332
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/9/2015 1:41:52 PM
JEFFREY D. KYLE
CLERK

## CERTIFICATE OF SERVICE

I served by ProDoc e-service and facsimile on this 18th day of February,

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/9/2015 1:41:52 PM
JEFFREY D. KYLE
Clerk

2015 to the individuals listed below:

WILL G. BASSHAM, SBN: 24073894
JEREMY J. OVERBEY, SBN: 24046570
**SETTLEPOU**
3333 Lee Parkway, Eighth Floor
Dallas, Texas 75219
Phone: 214-520-3300
Fax: 214-526-4145
*Counsel for Deutsche Bank National Trust Company, as Trustee*
*for Ameriquest Mortgage Securities, Inc.; Asset-Backed Pass-Through*
*Certificates Series 2003-6; and Homeward Residential, Inc.*

*/s/ William B. Gammon*
William B. Gammon

## CERTIFICATE OF COMPLIANCE

Pursuant to TRAP 9.4, I hereby certify that reliant upon the word count function in the word processing software used to produce this document, this document contains 3,142 words and 14-point for all text, except for footnotes which are in 12-point.

*/s/ William B. Gammon*
William B. Gammon



# Gammon Law Office, PLLC

**"We Represent the Good Guys"** ®

William B. Gammon
Anthony G. Read

Attorneys At Law
1201 Spyglass Drive | Suite 100
Austin, Texas 78746
512-444-4529 / 888-545-4279 (Fax)
www.GammonLawOffice.com

E. Jason Billick
Karla Huertas

March 2, 2015

**Attn:**    Jeffery D. Kyle        *Via Email & US Mail*
CLERK, THIRD DISTRICT OF TEXAS
P.O. Box 12547
Austin, TX 78711-2547
clerk@3rdcoa.courts.state.tx.us

**CC:**    Will Bassham        *Via Fax*
SettlePou
3333 Lee Pkwy 8th Floor
Dallas, TX 75219
Fax: 214-526-4145

**RE:**    **Appellant's Certificate of Compliance**
03-14-00721-CV
Raul Martinez v. Deutsche Bank National Trust Company as Trustee for
Amiquest Mortgage Securities, Inc.; Asset-Backed Pass-Through Certificates
Series 2003-6; Homeward Residential, Inc.; and Juanita Strickland

Dear Mr. Kyle:

Per your February 19, 2015 letter to our office, please find attached a copy of our
certificate of compliance to appellant's brief. Please feel free to contact our office should
you have any questions or require additional documents. Thank you.

Respectfully,
/s/ *Ambra Bourne-Dumas*, CP

*Enclosures:*
- Appellant's Certificate of Compliance

---

Appellant's Certificate of Compliance | Martinez v. Deutsche

## Ambra Bourne-Dumas

| | |
|---|---|
| **From:** | Ambra Bourne-Dumas |
| **Sent:** | Monday, March 2, 2015 3:38 PM |
| **To:** | 'clerk@3rdcoa.courts.state.tx.us' |
| **Subject:** | Martinez: 03-14-00721-CV Martinez v. Deutsche Bank National Trust - Appellant's Certificate of Compliance |
| **Attachments:** | Certificate of Compliance.pdf |

Hello Mr. Kyle,

Please see the attached letter and brief supplement and let me know if you have any questions. Thank you.

**AMBRA BOURNE-DUMAS, CP**
Paralegal
Gammon Law Office, PLLC
1201 Spyglass Drive | Suite 100
Austin, Texas 78746
Phone: 512-444-4529 | Fax: 888-545-4279
WWW.GAMMONLAWOFFICE.COM
"WE REPRESENT THE GOOD GUYS"®